1  John C. Grugan (PA 83148)
   gruganj@ballardspahr.com
2  *(admitted pro hac vice)*
   Thomas F. Burke (PA 320311)
3  burket@ballardspahr.com
   *(admitted pro hac vice)*
4  **BALLARD SPAHR LLP**
   1735 Market St., 51st Floor
5  Philadelphia, PA 19103-7599
   Telephone: (215) 864-8500
6  Facsimile: (215) 864-8999

7  Marcos D. Sasso (SBN 228905)
   sassom@ballardspahr.com
8  **BALLARD SPAHR LLP**
   2029 Century Park East, Suite 800
9  Los Angeles, CA 90067-2909
   Telephone: (424) 204-4400
10 Facsimile: (424) 204-4350

11 *Attorneys for Defendant Pennsylvania*
   *Higher Education Assistance Agency*
12

13       **UNITED STATES DISTRICT COURT**
         **NORTHERN DISTRICT OF CALIFORNIA**

14
15 THE PEOPLE OF THE STATE OF        CASE NO. 20-cv-03150-AGT
   CALIFORNIA, by and through the
   Commissioner of Business Oversight,
16
                 Plaintiff,          **NOTICE OF MOTION AND MOTION**
17                                    **OF DEFENDANT TO DISMISS**
           v.                        **COMPLAINT PURSUANT TO RULE**
18                                   **12(B)(6); MEMORANDUM OF POINTS**
   PENNSYLVANIA HIGHER EDUCATION     **AND AUTHORITIES IN SUPPORT**
19 ASSISTANCE AGENCY, d/b/a Fedloan,
                                     **Hearing**
20               Defendant.          Date: June 19, 2020
                                     Time: 10:00 a.m.
21
                                     Complaint Filed: April 1, 2020
22                                   Complaint Removed: May 8, 2020

23                                   [Declaration of Thomas F. Burke, Esq. filed
                                     and [Proposed] Order lodged concurrently]
24
25
26
27
28

CASE No. 20-cv-03150: NOTICE OF MOTION AND MOTION OF DEFENDANT TO
DISMISS COMPLAINT PURSUANT TO RULE 12(B)(6); MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT

Ballard Spahr LLP
2029 Century Park East, Suite 800
Los Angeles, California 90067-2909

Ballard Spahr LLP
2029 Century Park East, Suite 800
Los Angeles, California 90067-2909

**<u>TO PLAINTIFF AND ITS ATTORNEYS OF RECORD:</u>**

**PLEASE TAKE NOTICE THAT**, on June 19, 2020 at 10:00 a.m., or as soon thereafter as this matter may be heard, pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant Pennsylvania Higher Education Assistance Agency (PHEAA), by and through its undersigned counsel, will and hereby does move to dismiss the Complaint (Doc. No. 1 at Exhibit A) with prejudice.

This Motion is made on the grounds that the California Department of Business Oversight's (DBO) claims are barred by the doctrines of obstacle preemption, impossibility preemption, and intergovernmental immunity.

This Motion is based on this Notice of Motion and Motion, Memorandum of Points and Authorities, Declaration of Thomas F. Burke, Esq., and exhibits thereto, all papers and pleadings on file in this action and upon such other and further evidence and argument as may be presented to the Court in connection with this Motion.

DATED: May 15, 2020

Marcos D. Sasso
BALLARD SPAHR LLP

By:   */s/ Marcos D. Sasso*
        Marcos D. Sasso

        *Attorney for Defendant Pennsylvania
        Higher Education Assistance Agency*

CASE No. 20-cv-03150: NOTICE OF MOTION AND MOTION OF DEFENDANT TO DISMISS COMPLAINT PURSUANT TO RULE 12(B)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Ballard Spahr LLP
2029 Century Park East, Suite 800
Los Angeles, California 90067-2909

# TABLE OF CONTENTS

**Page**

I.   STATEMENT OF THE ISSUES TO BE DECIDED ....................................................1

II.  FACTUAL BACKGROUND ...............................................................................3

    A.   The Department's Administration of Federal Student Loans and Grants ..............3

    B.   The TEACH Program.......................................................................................6

    C.   California's Regulation of Student Loan Servicers................................................7

    D.   The DBO'S Examination of PHEAA ...................................................................9

    E.   The DBO's Complaint ....................................................................................10

III. LEGAL STANDARD .......................................................................................11

IV.  ARGUMENT ..................................................................................................12

    A.   The DBO's claims are preempted by federal law. ...............................................12

        1.   CSLSA is preempted as a matter of obstacle preemption. ......................13

        2.   CSLSA is invalid as a matter of impossibility preemption. .....................19

    B.   The DBO's claims are barred by the intergovernmental immunity doctrine. .......21

    C.   The DBO's complaint should be dismissed with prejudice because the
        DBO cannot cure the defects through amendment................................................22

V.   CONCLUSION ...............................................................................................23

CASE No. 20-cv-03150: NOTICE OF MOTION AND MOTION OF DEFENDANT TO
DISMISS COMPLAINT PURSUANT TO RULE 12(B)(6); MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Federal Cases**

4

*Arizona v. United States*,
5
    567 U.S. 387 (2012) ................................................................................................ 12

6

*Ashcroft v. Iqbal*,
7
    556 U.S. 662 (2009) ................................................................................................ 11

8

*Ass'n of Irritated Residents v. C&R Vanderham Dairy*,
    No. 05-cv-1593, 2007 U.S. Dist. LEXIS 70890 (E.D. Cal. Sept. 24, 2007) ............. 5

9

*Black Hills Power & Light Co. v. Weinberger*,
10
    808 F.2d 665 (8th Cir. 1987) ................................................................................... 21

11

*Blackburn v. United States*,
    100 F.3d 1426 (9th Cir. 1996) ................................................................................. 22

12

*Boeing Co. v. Movassaghi*,
13
    768 F.3d 832 (9th Cir. 2014) .............................................................................. 21, 22

14

*CTIA - The Wireless Ass'n v. City of Berkeley*,
15
    928 F.3d 832 (9th Cir. 2019) ................................................................................... 13

16

*Felder v. Casey*,
    487 U.S. 131 (1988) ................................................................................................ 12

17

*Freightliner Corp. v. Myrick*,
18
    514 U.S. 280 (1995) ................................................................................................ 19

19

*Gade v. Nat'l Solid Wastes Mgmt. Ass'n*,
20
    505 U.S. 88 (1992) .................................................................................................. 13

21

*Gartrell Constr. Inc. v. Aubry*,
    940 F.2d 437 (9th Cir. 1991) .............................................................................. 14, 15

22

*Geier v. Am. Honda Motor Co.*,
23
    529 U.S. 861 (2000) ................................................................................................ 12

24

*Goodyear Atomic Corp. v. Miller*,
    486 U.S. 174 (1988) ................................................................................................ 21

25

26

*Harding v. Galceran*,
    889 F.2d 906 (9th Cir. 1989) ................................................................................... 12

27

28

Ballard Spahr LLP
2029 Century Park East, Suite 800
Los Angeles, California 90067-2909

ii

CASE No. 20-cv-03150: NOTICE OF MOTION AND MOTION OF DEFENDANT TO
DISMISS COMPLAINT PURSUANT TO RULE 12(B)(6); MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT

*Leslie Miller v. Arkansas*,
    352 U.S. 187 (1956) ............................................................................. 3, 13, 14, 15, 16, 17

*McClellan v. I-Flow Corp.*,
    776 F.3d 1035 (9th Cir. 2015) ............................................................................ 12

*Medtronic, Inc. v. Lohr*,
    518 U.S. 470 (1996) ............................................................................................. 13

*Mfg. Co. LLC v. City of New York*,
    708 F.3d 428 (2d Cir. 2013) ................................................................................ 17

*Northbay Healthcare Grp. Hosp. Div. v. Blue Shield of Cal. Life & Health Ins.*,
    342 F. Supp. 3d 980 (N.D. Cal. 2018) .................................................................. 5

*Parrino v. FHP, Inc.*,
    146 F.3d 699 (9th Cir. 1998) ............................................................................... 5

*PHEAA v. Perez*,
    No. 18-cv-1114, 2020 U.S. Dist. LEXIS 76090 (D. Conn. Apr. 30, 2020) .......... 14, 16, 17, 19

*Sciortino v. PepsiCo, Inc.*,
    108 F. Supp. 3d 780 (N.D. Cal. 2015) ................................................................. 12

*Shaw v. Delta Air Lines, Inc.*,
    463 U.S. 85 (1983) .............................................................................................. 12

*Sperry v. State of Fla. ex rel. Florida Bar*,
    373 U.S. 379 (1963) ...................................................................................... 14, 17

*Student Loan Servicing Alliance (SLSA) v. District of Columbia*,
    351 F. Supp. 3d 26 (D.D.C. 2018) ............................................................ 10, 16, 17, 19

*Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.*,
    368 F.3d 1053 (9th Cir. 2004) ............................................................................ 22

*United States v. Virginia*,
    139 F.3d 984 (4th Cir. 1998) ..................................................................... 14, 16, 21

*Volt Info. Sciences v. Stanford Univ.*,
    489 U.S. 468 (1989) ........................................................................................... 13

*Wyler Summit P'ship v. Turner Broad. Sys., Inc.*,
    135 F.3d 658 (9th Cir. 1998) .............................................................................. 11

Ballard Spahr LLP
2029 Century Park East, Suite 800
Los Angeles, California 90067-2909

iii

**State Cases**

*Cmwlth. of Mass. v. PHEAA,*
  No. 1784-CV-02682 (Mass. Super. Ct.)...........................................................19

**Federal Statutes**

20 U.S.C. § 1070 ......................................................................................................18

20 U.S.C. §§ 1070g–1070g-4 ................................................................................1, 6

20 U.S.C. § 1070g-1 ...................................................................................................6

20 U.S.C. § 1070g-2 ...................................................................................................6

20 U.S.C. § 1082 ........................................................................................................4

20 U.S.C. § 1087a .................................................................................................3, 22

20 U.S.C. § 1087e .......................................................................................................3

20 U.S.C. § 1087f ...............................................................................................4, 15 18

Higher Education Act, 20 U.S.C. §§ 1087a *et seq.* ....................................2, 4, 16, 18, 19

Privacy Act of 1974, 5 U.S.C. § 552a ..............................................................*passim*

**State Statutes**

California Student Loan Servicing Act, Cal. Fin. Code § 28100 *et seq.*.........................1

Cal. Fin. Code § 28102 ...............................................................................................7

Cal. Fin. Code §§ 28106(b)(1), 28120(b).......................................................8, 15, 18

Cal. Fin. Code § 28108(a)(1) ...........................................................................8, 11, 18, 22

Cal. Fin. Code § 28130 ..........................................................................................8, 10

Cal. Fin. Code § 28154(a) ......................................................................................8, 11

Cal. Fin. Code § 28172 .............................................................................................11

Colo. Rev. Stat. § 5-20-106(1) ...................................................................................7

Me. Stat. Title 9-A §§ 14-107(9), 14-108(2)..............................................................7

Pa. Stat. § 5101 ..........................................................................................................4

Ballard Spahr LLP
2029 Century Park East, Suite 800
Los Angeles, California 90067-2909

CASE No. 20-cv-03150: NOTICE OF MOTION AND MOTION OF DEFENDANT TO
DISMISS COMPLAINT PURSUANT TO RULE 12(B)(6); MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT

Pa. Stat. §§ 5102, 5105.6.............................................................................................. 4

Wash. Rev. Code § 31.04.420 ..................................................................................... 7

**Rules**

Federal Rule of Civil Procedure 12(b)(6) ............................................................. 1, 11

**Regulations**

34 C.F.R. § 686.43 (2017)........................................................................................ 7, 22

48 C.F.R. §§ 9.103–9.104-1 (2001) ........................................................................ 4, 15

*Notice of Federal Preemption and State Regulation of the Department of
   Education's Federal Student Loan Programs and Federal Student Loan
   Servicers*, 83 Fed. Reg. 10619 (Mar. 12, 2018) .................................................. 19

**Other Authorities**

Federal Student Aid, TEACH Grant Reconsideration Process, *available at*
   https://studentaid.gov/understand-aid/types/grants/teach/teach-reconsideration
   (last accessed May 11, 2020) ................................................................................. 7

Ballard Spahr LLP
2029 Century Park East, Suite 800
Los Angeles, California 90067-2909

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

CASE No. 20-cv-03150: NOTICE OF MOTION AND MOTION OF DEFENDANT TO
DISMISS COMPLAINT PURSUANT TO RULE 12(B)(6); MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT

Ballard Spahr LLP
2029 Century Park East, Suite 800
Los Angeles, California 90067-2909

## I.      STATEMENT OF THE ISSUES TO BE DECIDED

This lawsuit, filed by the California Department of Business Oversight (DBO), presents a simple question—whether a state agency, exercising authority under a state licensing statute, may compel the production of federal records from a federal contractor that has been instructed by its federal contractual counterparty and regulator not to produce those same records.  The simple answer, as another court recently concluded after exhaustive analysis on identical facts, is that under the Supremacy Clause of the U.S. Constitution, the state licensing regime is preempted as to federal contractors, meaning that the state agency may not enforce its document requests or penalize the federal contractor for its adherence to federal law.

The facts in this case are not complex and are unlikely to be disputed.  In 2009, the U.S. Department of Education (the Department) exercised its federal statutory authority to designate defendant Pennsylvania Higher Education Assistance Agency (PHEAA) as a federal student loan servicer.  Several years later, in 2016, the California Legislature passed the California Student Loan Servicing Act (CSLSA), California Financial Code § 28100 *et seq.*, which purports to allow the DBO[1] to grant or deny licenses to student loan servicers operating within the State of California, and to enjoin unlicensed servicers from operating within the State.  CSLSA purports to confer on the DBO the authority to examine and seize all records held by applicants or licensees and to penalize noncompliance with its orders through imposition of fines, as well as revocation or suspension of licenses.

In December 2019, the DBO announced that it intended to examine the books and records of PHEAA, which serves, pursuant to a contract with the Department, as the exclusive servicer for the Teacher Education Assistance for College and Higher Education (TEACH) Program, 20 U.S.C. §§ 1070g–1070g-4.  The TEACH Program funds grants for college students who have committed to teaching after graduation in specified high-need subjects in low-income areas.  PHEAA's

---

[1]   Many of CSLSA's provisions refer specifically to the Commissioner of the DBO, rather than the DBO itself.  For convenience, PHEAA refers to both the Commissioner and the entity as "the DBO."

CASE No. 20-cv-03150: NOTICE OF MOTION AND MOTION OF DEFENDANT TO DISMISS COMPLAINT PURSUANT TO RULE 12(B)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

contract with the Department (the Servicing Contract) specifies that all federal records in its possession are the property of the Department and that PHEAA, as a federal contractor, is subject to the mandates of the federal Privacy Act, which criminalizes the disclosure of government records containing personal information unless an enumerated exception applies.  In short, the DBO demanded that PHEAA produce TEACH-related records owned by the Department and implicating the Privacy Act; based on its contractual obligations and standing guidance from the Department, PHEAA stated that it was unable to comply with the DBO's demands; the DBO threatened to penalize PHEAA, including through the imposition of a $100 fine for each day of noncompliance; and the Department directly informed the DBO that PHEAA was not permitted to produce the records at issue.  The DBO persisted with its demand and now seeks declaratory and injunctive relief on the premise that CSLSA applies with full force even to federal student loan servicers such as PHEAA.

The DBO's position is wrong: CSLSA does not apply to federal contractors such as PHEAA for three well-established doctrinal reasons, each of which presents an independent ground for dismissal with prejudice of the DBO's suit in its entirety.

*First*, CSLSA is preempted under the doctrine of obstacle preemption because it inhibits implementation and execution of the federal Higher Education Act (HEA), 20 U.S.C. §§ 1087a *et seq.*, which gives the Department statutory authority to select its student loan servicer contractors. CSLSA, however, purports to vest the DBO with authority that overlaps the Department's: the authority to impose licensing requirements on federal student loan servicers, compel the production of documents from licensees, and either revoke the license of or impose penalties upon servicers that do not comply with their CSLSA obligations.  Under the *Leslie Miller* line of cases, the Supreme Court and the Ninth Circuit have deemed similar state licensing regimes unconstitutional as applied to federal contractors, and CSLSA has no distinguishing feature that would warrant a different result.

Ballard Spahr LLP
2029 Century Park East, Suite 800
Los Angeles, California 90067-2909

2

CASE No. 20-cv-03150: NOTICE OF MOTION AND MOTION OF DEFENDANT TO DISMISS COMPLAINT PURSUANT TO RULE 12(B)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

*Second*, the DBO's claims are preempted under the doctrine of impossibility preemption, which dictates that a state law is preempted where compliance with both state and federal obligations would be impossible. Here, the DBO has demanded production of records that the Department forbids PHEAA to produce based on its ownership of the records and its interpretation of the Privacy Act. PHEAA is in the untenable situation of violating state or federal law regardless of how it proceeds: if it withholds the records, it faces the promise of sanctions from the DBO, and if it produces the records, the Department may terminate PHEAA's contract or refer it for possible prosecution under the Privacy Act. Under such circumstances, the Supremacy Clause commands that CSLSA is preempted and PHEAA cannot be sanctioned under state law for adhering to its federal obligations.

*Third*, the doctrine of intergovernmental immunity—which is closely related to preemption—precludes state efforts to regulate the federal government, including through the regulation of a federal contractor. The DBO has threatened PHEAA with the imposition of penalties based on its failure to produce federal borrower records for inspection by the DBO. Those sanctions would impede the ongoing operation of federal programs, including the very programs that the DBO purports to review for the benefit of consumers. Because the Supremacy Clause bars the DBO from regulating the federal government by proxy, the DBO's claims should be dismissed.

## II.    FACTUAL BACKGROUND

### A.    The Department's Administration of Federal Student Loans and Grants

Under the HEA, Pub. L. No. 89-329, 79 Stat. 1219 (1965), and related statutes and regulations, the Department has the authority to issue a variety of federal loans and grants to student borrowers. *See* 20 U.S.C. §§ 1082(a)(1), 1087a, 1087e. Specifically relevant here are loans made under the William D. Ford Federal Direct Loan Program, 20 U.S.C. §§ 1087a *et seq.* (Direct Loans, or the Direct Loan Program), which are issued by the federal government directly to eligible student borrowers, and grants awarded pursuant to the TEACH Program.

Ballard Spahr LLP
2029 Century Park East, Suite 800
Los Angeles, California 90067-2909

3

The Department is authorized by statute to contract with entities such as PHEAA to service the loans and grants issued under the HEA.  20 U.S.C. § 1087f.  Before awarding a contract, the Department must conclude that its proposed partner is "qualified to provide such services . . . and will comply with the procedures applicable to the award of such contracts."  *Id.* § 1087f(a)(2).  In addition, such entities must "have extensive and relevant experience and demonstrated effectiveness."  *Id.*  Further, the Department must "ensure that such services . . . are provided at competitive prices."  *Id.* § 1087f(a)(1).  The bidding process for the Department's selection of student loan servicers is also governed by the Federal Acquisition Regulations, which require the Department to contract only with "responsible" contractors, i.e., contractors that "(a) [h]ave adequate financial resources to perform the contract, or the ability to obtain them," "(b) [are] able to comply with the required or proposed delivery or performance schedule," "(c) [h]ave a satisfactory performance record," "(d) [h]ave a satisfactory record of integrity and business ethics," "(e) [h]ave the necessary organization, experience, accounting and operational controls, and technical skills, or the ability to obtain them," and meet other requirements.  48 C.F.R. §§ 9.103–9.104-1 (2001).

In 2009, PHEAA was selected by the Department to service federal loans on a national basis.  Compl. ¶ 20, Doc. No. 1 at Exhibit A.  PHEAA was created in 1963 by the Commonwealth of Pennsylvania as "a body corporate and politic constituting a public corporation and government instrumentality."  24 Pa. Stat. § 5101.  PHEAA's founding mission is to improve higher education opportunities for Pennsylvania residents by funding student loans and grants.  24 Pa. Stat. §§ 5102, 5105.6.  Over time, PHEAA also began to service student loans and grants.  *Id.* § 5104(1.1)(iii).

PHEAA's servicing of federal loans and grants is governed by its Servicing Contract with the Department (the Servicing Contract).  *See* Declaration of Thomas F. Burke (Burke Decl.), Ex.

Ballard Spahr LLP
2029 Century Park East, Suite 800
Los Angeles, California 90067-2909

4

Ballard Spahr LLP
2029 Century Park East, Suite 800
Los Angeles, California 90067-2909

A, Excerpts of Servicing Contract.[2]  Among many other things, the Servicing Contract requires PHEAA to comply with strict records management requirements, "including those policies associated with the safeguarding of records covered by the Privacy Act of 1974." *Id.* at 53.  The Privacy Act prohibits federal agencies and contractors from disclosing records containing personal information without consent. 5 U.S.C. § 552a(b). Employees of federal contractors are considered employees of a federal agency for purposes of applicability of the Privacy Act's criminal penalties for prohibited disclosure of protected records.  *See* 5 U.S.C. § 552a(i), (m).

The Servicing Contract also specifically states that the Department, not PHEAA, owns and has absolute rights with respect to federal records and related information held by PHEAA:

> It is understood and mutually agreed that the Department of Education has exclusive ownership of all information stored in, retrieved, modified, and/or archived in as part of this service. The contractor shall have no rights in such information and no rights to such information shall vest on the contractor by virtue of its performance of this contract. No other party has the right to copy, delete, archive, or transfer such information without the prior express written consent of the Department of Education.

Servicing Contract at 24; *see also id.* at 53–54 (citing Privacy Act and providing that PHEAA "shall treat all deliverables under the contract as the property of the U.S. Government for which [the Department] shall have unlimited rights to use, dispose of, or disclose such data contained therein as it determines to be in the public interest" and "[PHEAA] shall not retain, use, sell, or disseminate copies of any deliverable that contains information covered by the Privacy Act . . . .").

---

[2]  The Servicing Contract is properly before the Court on PHEAA's motion to dismiss because the DBO's Complaint "necessarily relies" on the Contract, *see* Compl. ¶¶ 4, 17–18, 20, 24, 39, 50, and presumably the DBO does not dispute its authenticity. *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998), *superseded by statute on grounds unrelated to judicial notice as stated in Abrego v. Dow Chemical Co.*, 443 F.3d 676, 681 (9th Cir. 2006). Further, all of PHEAA's exhibits are non-confidential documents of a government agency, and thus constitute public records of which this Court may take judicial notice. *See Northbay Healthcare Grp. Hosp. Div. v. Blue Shield of Cal. Life & Health Ins.*, 342 F. Supp. 3d 980, 990 n.3 (N.D. Cal. 2018); *Ass'n of Irritated Residents v. C&R Vanderham Dairy*, No. 05-cv-1593, 2007 U.S. Dist. LEXIS 70890, at *30 (E.D. Cal. Sept. 24, 2007).

5

CASE No. 20-cv-03150: NOTICE OF MOTION AND MOTION OF DEFENDANT TO DISMISS COMPLAINT PURSUANT TO RULE 12(B)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

On December 27, 2017, the Department issued a memorandum to PHEAA (and other federal student loan servicers) concerning the obligations of such servicers under the Privacy Act. *See* Burke Decl., Ex. B, Dec. 27, 2017 Memo entitled "Ownership and Access to U.S. Department of Education Records and Data" (the Privacy Act Memo).  The Privacy Act Memo reiterated that federal records held by federal contractors are protected by the Privacy Act, that the Department owns these records, and that "[a]ny request from any third party for Department records to which a contractor has access must be made directly to Department, where it will be evaluated for compliance with the requirements of the Privacy Act, unless the contract has specifically provided otherwise." *Id.*

**B.     The TEACH Program**

In 2007, Congress created the TEACH Program, which offers grants to college students who commit to post-graduate teaching employment in certain fields at low-income schools.  20 U.S.C. §§ 1070g–1070g-4; Compl. ¶ 13.  Participants may receive up to $4,000 per academic year in TEACH Grants for undergraduate, post-baccalaureate, and graduate programs.  Compl. ¶ 14.  Undergraduate students may receive a maximum of $16,000 in TEACH Grants, while graduate students are capped at $8,000.  20 U.S.C. § 1070g-1(d).

To receive a TEACH Grant, a student must sign an "Agreement to Serve," in which he or she agrees to teach for at least four years in an eligible position at a low-income school within eight years of graduating.  *See* Compl. ¶ 15; 20 U.S.C. § 1070g-2(b).  Included in the Agreement to Serve are a series of notices and rules established by the Department, stating, in part, that recipients must: (1) certify within 120 days of completing school that they are employed in a qualifying position or intend to satisfy the terms of service; and (2) certify annually that they intend to complete their service and are on track to do so within the permitted time frame.  *See* 20 U.S.C. § 1070g-2(b); Compl. ¶¶ 15–16.   In accordance with Department regulations, recipients are informed that if they fail to comply with these provisions, their grant will be "converted" to a

Ballard Spahr LLP
2029 Century Park East, Suite 800
Los Angeles, California 90067-2909

CASE No. 20-cv-03150: NOTICE OF MOTION AND MOTION OF DEFENDANT TO DISMISS COMPLAINT PURSUANT TO RULE 12(B)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

Ballard Spahr LLP
2029 Century Park East, Suite 800
Los Angeles, California 90067-2909

1  Direct Loan subject to repayment in full, with interest. 20 U.S.C. § 1070g-2(c); 34 C.F.R.

2  § 686.43(a) (2017); *see* Compl. ¶ 15.

3       In February 2019, the Department launched a TEACH Grant "reconsideration" program,

4  administered by PHEAA, under which certain borrowers whose TEACH Grants were converted

5  into loans may seek "reconversion" of the loan into a TEACH Grant. *See* Federal Student Aid,

6  TEACH Grant Reconsideration Process, *available at* https://studentaid.gov/understand-

7  aid/types/grants/teach/teach-reconsideration (last accessed May 11, 2020); *see also* Compl. ¶ 25.

8  Specifically, for borrowers who had a TEACH Grant converted to a loan because of failure to

9  complete their annual certification requirements, but (1) completed their four years of qualifying

10  teaching service, or (2) can still complete their service, the reconsideration program provides an

11  opportunity to have the loan "reconverted" back into a TEACH grant. *Id.*

12    **C.    California's Regulation of Student Loan Servicers**

13       In 2016, the California Legislature enacted CSLSA subject to a delayed implementation

14  date of July 1, 2018. Compl. ¶ 31. CSLSA provides that "[n]o person shall engage in the business

15  of servicing a student loan in [California] without first obtaining a license pursuant to [CSLSA]."

16  Cal. Fin. Code § 28102(a).[3] "Servicing" includes, among other things, receiving scheduled

17  payments from student borrowers, applying payments to a borrower's account, maintaining

18  account records, communicating with borrowers about their loans on behalf of the loan's owner,

19  and helping borrowers avoid default. *Id.* § 28104(l).

20       The DBO may refuse to issue a license to an applicant for many reasons, including failure

21  to comply with any provision of CSLSA or order of the DBO, or because the DBO, in its own

22

23  [3]   CSLSA contains exceptions specifying certain types of entities that are not required to obtain
    a license, *see* Cal. Fin. Code § 28102(b), but none apply to PHEAA. A number of states other
24  than California, by contrast, have enacted student loan servicer licensing statutes that deem
    federal servicers automatically licensed or exempt federal servicers from state licensing
25  obligations entirely. *See, e.g.*, Colo. Rev. Stat. § 5-20-106(1); Me. Stat. tit. 9-A §§ 14-107(9),
    14-108(2); Wash. Rev. Code § 31.04.420 (exempting "[t]he United States or any department
26  or agency thereof" from the State of Washington's servicer licensing requirement "to the
    extent [the federal entity in question] is servicing student education loans that it originated").
27

                                          7
28  ────────────────────────────────────────────────────
    CASE No. 20-cv-03150: NOTICE OF MOTION AND MOTION OF DEFENDANT TO
    DISMISS COMPLAINT PURSUANT TO RULE 12(B)(6); MEMORANDUM OF POINTS
                        AND AUTHORITIES IN SUPPORT

judgment, "is unable to find that the financial responsibility, criminal records, experience, character, and general fitness of the applicant . . . support a finding that the business will be operated honestly, fairly, efficiently, and in accordance with the requirements of this division." *Id.* §§ 28106(b)(1), 28120(b).  The DBO may also revoke or suspend for cause any student loan servicing license, *id.* §§ 28106(b)(2), 28166, and impose penalties of up to $2,500 for any violation of CSLSA, *id.* § 28170(a).

CSLSA also purports to vest the DBO with broad authority to review and even seize the books and records of applicants or licensees.  In the course of assessing an applicant's eligibility for a license or to ensure compliance with other provisions of CSLSA, the DBO may "access, receive, and use *any* books, accounts, records, files, documents, information, or evidence" relating to the servicing of student loans.  *Id.* § 28108(a)(1) (emphasis added).  The DBO may "control access" to such materials, including by "tak[ing] possession" of the materials.  *Id.* § 28108(b).  "As often as the [DBO] deems necessary and appropriate," the DBO may inspect a licensee's books and records.  *Id.* § 28152(a).

CSLSA also imposes a number of affirmative obligations on licensees, including to "[f]ile with the [DBO] any report required by the [DBO]"; to "[c]omply with the provisions of [CSLSA] and any regulation or order of the [DBO]"; and to "[s]ubmit to periodic examination by the [DBO]."  *Id.* § 28130(b)–(d).  A licensee is prohibited from "willfully mak[ing] any omission of a material fact in connection with any information or reports filed with the [DBO]."  *Id.* § 28136(f).

CSLSA vests the DBO with various enforcement powers to ensure compliance with CSLSA's provisions. A licensee that fails to submit required reports containing all "matter required by law or by the [DBO]" is subject to daily fines of $100 and suspension or revocation of its license.  *Id.* § 28154.  The DBO may also, after notice and a hearing on alleged violations of CSLSA, issue an order prohibiting a licensee "from engaging in any servicing" in the State of California.  *Id.* § 28156(c).

Ballard Spahr LLP
2029 Century Park East, Suite 800
Los Angeles, California 90067-2909

8

The DBO also has vast power with respect to parties who engage in unlicensed student loan servicing.  These powers include the ability to (1) order any unlicensed entity to "desist and refrain" from further student loan servicing, (2) impose fines and seek civil penalties, *id.* §§ 28170–72 (referring to any "person," rather than applicant or licensee, who violates a provision of CSLSA or any order thereunder), and (3) bring suit and seek appointment of a receiver for defendant and defendant's assets, *id.* § 28168(a) (same).  None of these sanctions is contingent on a showing of actual harm to consumers—they are available solely on a showing of noncompliance with the statutory licensing regime, related regulations, or the DBO's orders.

### D.    The DBO'S Examination of PHEAA

On November 5, 2018, the DBO approved PHEAA's application for a student loan servicer license under CSLSA. Compl. ¶¶ 2–3.  On December 12, 2019, the DBO sent PHEAA a letter (the Examination Request) demanding that PHEAA produce, no later than December 30, 2019, voluminous records pertaining to the TEACH Program, including: "[a]ll policies/procedures related to the TEACH Grant program"; all "[t]raining records for front line staff"; and "all documents related to each and every inquiry or complaint submitted by or on behalf of a [California] TEACH Grant recipient."  Compl., Attachment A.[4]  PHEAA declined to produce the requested documents, citing the Servicing Contract and the Privacy Act Notice.  *See* Compl. ¶ 46.

On January 13, 2020, the DBO conducted an on-site examination of PHEAA.  *Id.* ¶ 40.  During the examination, PHEAA declined to produce the requested documents on the bases of the terms of the Servicing Contract and the Department's directives.  *Id.* ¶¶ 40, 46.  On February 3, 2020, the DBO conducted a second on-site examination of PHEAA, where PHEAA again declined to produce the requested documents.  *Id.*

---

[4]    PHEAA services the converted Direct Loans for most TEACH Grant recipients who fail to satisfy their teaching commitment.  Consequently, the Department's request for documents relating to complaints from TEACH Grant recipients (which may stem from conversion of their TEACH Grant into a Direct Loan) is in some cases a request for Direct Loan records as well.

9

Ballard Spahr LLP
2029 Century Park East, Suite 800
Los Angeles, California 90067-2909

On February 6, 2020, PHEAA provided the DBO with additional written notice that it was unable to produce the requested records pursuant to its Servicing Contract and the Privacy Act. Compl. ¶ 39.  PHEAA also provided the DBO with the Privacy Act Memo, which explained that the Department had forbidden PHEAA from producing the requested documents to third parties, such as the DBO.  Compl., Attachment B.  On April 10, 2020, the DBO sent a letter to PHEAA stating that its document production was deficient, and that the DBO "may take action as a result of the deficient annual report, including but not limited to, a penalty pursuant to section 28154 in a sum of up to one hundred dollars ($100.00) for every day that the annual report is deficient as a result of the omission of the Federal loan data."  Burke Decl., Ex. C, Apr. 10, 2020 Letter from M. Alvarez to J. Guise.

On April 24, 2020, the Department formally responded to the DBO's February 13, 2020 request for the records at issue.  *See* Burke Decl., Ex. D, April 24, 2020 Letter from A. Sierra to W. Horsey.  The Department noted that it had authorized the production of certain records that did not implicate the Privacy Act, but was denying the request for documents that did.  *Id.* at 1.  The Department explained that PHEAA could not produce the documents at issue because "the information and records sought by your law enforcement request letter belong to the Department, not PHEAA."  *Id.* at 2.  Further, the Department reiterated its position that "state laws regulating Direct Loan servicing are preempted by Federal law," and observed that this position recently had been adopted by a federal court in *Student Loan Servicing Alliance v. District of Columbia*, 351 F. Supp. 3d 26 (D.D.C. 2018).  *Id.* at 2–3.  On those grounds, the Department declined to produce, or authorize PEHAA to produce, the records sought by the DBO.

## E.    The DBO's Complaint

On April 1, 2020, the DBO filed a two-count complaint against PHEAA in California Superior Court for the County of San Francisco.  Count One of the Complaint seeks a preliminary and permanent injunction compelling PHEAA to (1) comply with Financial Code § 28130(b)–(d), (2) "file with the [DBO] a required report," (3) "comply with an order of the [DBO]," and (4)

Ballard Spahr LLP
2029 Century Park East, Suite 800
Los Angeles, California 90067-2909

10

"submit to a periodic examination" under Financial Code §§ 28108(a)–(b) and 28154(a).  Compl. ¶ 53(1).  The DBO alleges that PHEAA has violated CSLSA and will continue to do so in the absence of an injunction.

Further, based on a live controversy "concerning the legality and enforceability of [CSLSA], and whether it is preempted by federal law," Compl. ¶ 51, Count Two of the Complaint seeks a declaratory judgment that (1) PHEAA "must comply at all times with all provision[s]" of CSLSA, including with respect to federal loans; (2) the DBO may enforce all provisions of CSLSA, including with respect to federal loans; and (3) PHEAA must pay "an annual pro-rata assessment of the proportion of [PHEAA's] servicing activities in California as levied by" the DBO.  *Id.* ¶ 52.  The DBO also seeks, as a form of relief, an award of penalties of $2,500 per violation of CSLSA under Financial Code § 28172.  *Id.* ¶ 53(3).

On May 8, 2020, PHEAA removed this matter to federal court.  *See* Doc. No. 1.

## III.  <u>LEGAL STANDARD</u>

When considering a motion to dismiss under Federal Rule 12(b)(6), a court must accept all well-pleaded allegations of material fact as true and draw all reasonable inferences in favor of the plaintiff.  *See Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998).  The court, however, need not accept as true a legal conclusion presented as a factual allegation.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  A pleading that offers only "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" will not survive a motion to dismiss under Federal Rule 12(b)(6).  *Id.* (quoting *Twombly,* 550 U.S. at 555).

Ballard Spahr LLP
2029 Century Park East, Suite 800
Los Angeles, California 90067-2909

IV.   **ARGUMENT**

The Court should dismiss the DBO's Complaint because, under Supreme Court and Ninth Circuit precedent directly on point, its claims are barred under the doctrines of obstacle preemption, impossibility preemption, and intergovernmental immunity.

A.   **The DBO's claims are preempted by federal law.**

The doctrine of preemption holds that "'any state law, however clearly within a State's acknowledged power, which interferes with or is contrary to federal law, must yield.'"  *Harding v. Galceran*, 889 F.2d 906, 908 (9th Cir. 1989) (quoting *Felder v. Casey*, 487 U.S. 131, 138 (1988)).  Preemption may be express (such as where Congress, by way of statute, has explicitly decreed that certain state laws are preempted) or implied by the nature of Congressional action in a particular area.  *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 95 (1983).

One form of implied preemption is "conflict" preemption, which "occurs where there is an actual conflict between state and federal law." *McClellan v. I-Flow Corp.*, 776 F.3d 1035, 1039 (9th Cir. 2015) (citations and internal quotation marks omitted).  Conflict preemption itself is subdivided into "obstacle preemption" (where "the challenged state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress") and "impossibility preemption" (where "compliance with both federal and state regulations is a physical impossibility").  *Arizona v. United States*, 567 U.S. 387, 399 (2012) (citation and internal quotation marks omitted).  Both forms of conflict preemption require invalidation of CSLSA as applied to a federal student loan servicer such as PHEAA.

Courts have often applied a presumption against preemption in cases where the subject matter of the challenged state legislation relates to an area falling within the historic police power of the states, such as consumer protection.  *See Sciortino v. PepsiCo, Inc.*, 108 F. Supp. 3d 780, 795–96 (N.D. Cal. 2015).  In the absence of a presumption, the defendant must establish that implied preemption applies based on "clear evidence of a conflict," *Geier v. Am. Honda Motor Co.*, 529 U.S. 861, 885 (2000); in cases where the presumption applies, the defendant must show

Ballard Spahr LLP
2029 Century Park East, Suite 800
Los Angeles, California 90067-2909

CASE No. 20-cv-03150: NOTICE OF MOTION AND MOTION OF DEFENDANT TO DISMISS COMPLAINT PURSUANT TO RULE 12(B)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

that preemption was the "clear and manifest purpose of Congress."  *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996) (internal quotation marks omitted).  PHEAA meets both standards here.

### 1.   CSLSA is preempted as a matter of obstacle preemption.

Obstacle preemption occurs when a state law would directly conflict with federal law or would "undermine [its] goals and policies." *Volt Info. Sciences v. Stanford Univ*., 489 U.S. 468, 477–78 (1989).  The Supreme Court has clarified that "[i]n determining whether state law stands as an obstacle to the full implementation of a federal law it is not enough to say that the ultimate goal of both federal and state law is the same." *Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 103 (1992) (citations and internal quotation marks omitted).  Instead, a state law also is preempted "if it interferes with the methods by which the federal statute was designed to reach that goal." *Id.* (internal quotation marks omitted).

In cases where "Congress charges an agency with balancing competing objectives, it intends the agency to use its reasoned judgment to weigh the relevant considerations and determine how best to prioritize those objectives."  *CTIA - The Wireless Ass'n v. City of Berkeley*, 928 F.3d 832, 849 (9th Cir. 2019) (internal quotation marks and citation omitted).  "Allowing a state law to impose a different standard impermissibly permits a re-balancing of those objectives."  *Id.* (internal quotation marks, alterations, and citation omitted).   A federal agency's statutorily authorized determination that a particular party is fit to perform a certain federal function is thus a core area in which states may not impose additional burdens.  CSLSA, however, does precisely that.

### a.   *Leslie Miller* and subsequent authority establish that state licensing regimes are preempted with respect to federal contractors.

The application of state licensing requirements to federal contractors is well-trod territory. Dating back to *Leslie Miller v. Arkansas*, 352 U.S. 187 (1956), the Supreme Court has invalidated any state licensing scheme that would "give 'the State's licensing board a virtual power of review over the federal determination' that a person or agency is qualified and entitled to perform certain functions, or which impose upon the performance of activity sanctioned by federal license

CASE No. 20-cv-03150: NOTICE OF MOTION AND MOTION OF DEFENDANT TO DISMISS COMPLAINT PURSUANT TO RULE 12(B)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

Ballard Spahr LLP
2029 Century Park East, Suite 800
Los Angeles, California 90067-2909

1  additional conditions not contemplated by Congress." *Sperry v. State of Fla. ex rel. Florida Bar*,

2  373 U.S. 379, 385 (1963) (quoting *Leslie Miller*, 352 U.S. at 190).[5]

3        This principle has been applied in a number of contexts, all with the uniform conclusion

4  that state efforts to impose licensing requirements on federal contractors are invalid.  *See, e.g.*,

5  *Leslie Miller*, 352 U.S. at 189–90 (invalidating Arkansas requirement that federal contractor obtain

6  state license to perform work at a U.S. Air Force base); *Sperry*, 373 U.S. at 385 (invalidating

7  Florida requirement that plaintiff obtain state bar license to practice before U.S. Patent Office);

8  *United States v. Virginia*, 139 F.3d 984, 987 (4th Cir. 1998) (invalidating Virginia requirement

9  that federal contractor comply with state licensing requirements for private security services).

10        The Ninth Circuit in particular has addressed the vitality of *Leslie Miller* on analogous

11  facts.  In *Gartrell Constr. Inc. v. Aubry*, 940 F.2d 437, 439–41 (9th Cir. 1991), the court applied

12  obstacle preemption to invalidate a California requirement that a federal contractor obtain a state

13  license to perform work at an in-state Navy facility.  Of central importance to the court's opinion

14  was the fact that California, through its licensing review, was attempting to independently assess

15  the same factors reserved to the judgment of a federal agency:

16        The factors California considers before granting a California contractor's license
       are similar to those the federal government considers in determining responsibility.
17        The California Contractor's License Board investigates, examines, and classifies
       contractors according to their degree of knowledge and experience in particular
18        trades and according to their general knowledge of the building, safety, health and
       lien laws of the state. The applicant for such a license must be of good character
19        and demonstrate financial responsibility.   Similarly, the Federal Acquisition
       Regulations (FAR) require the prospective contractor to have adequate financial
20        resources, to be able to comply with the performance schedule, to have a
       satisfactory record of integrity and business ethics.  The similarity of factors makes
21        clear that California, through its licensing requirements, is effectively attempting

22

23  _____

    [5]    In later years, some courts have debated whether *Leslie Miller* and *Sperry* are doctrinally
24  related to obstacle preemption or intergovernmental immunity.  *See PHEAA v. Perez*, No. 18-
    cv-1114, 2020 U.S. Dist. LEXIS 76090, at *25 n.3 (D. Conn. Apr. 30, 2020) (summarizing
25  cases).  PHEAA raises both defenses here, *see supra* at 13, and as the *Perez* court concluded,
    "whether one characterizes *Leslie Miller* as a preemption case or an immunity case, the
26  Supreme Court has made clear that, under the Supremacy Clause, state law cannot directly
    interfere with the federal Government's selection of its contractors." *Id.*

27

28

CASE No. 20-cv-03150: NOTICE OF MOTION AND MOTION OF DEFENDANT TO
DISMISS COMPLAINT PURSUANT TO RULE 12(B)(6); MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT

Ballard Spahr LLP
2029 Century Park East, Suite 800
Los Angeles, California 90067-2909

1    to review the federal government's responsibility determination. That review is
2    prohibited by *Leslie Miller*.

*Id.* at 439 (citations omitted).   The panel further dismissed arguments that *Leslie Miller* was a
3    narrow and outdated rule:

4        The *Leslie Miller* rule, then, has the full force that it had when announced in 1956.
5        Gartrell, as a contractor with the federal government, is exempt from California's
         licensing requirements.   Because the federal government made a direct
6        determination of Gartrell's responsibility, California may not exercise a power of
7        review by requiring Gartrell to obtain state licenses.   To hold otherwise would
         interfere with federal government functions and would frustrate the federal policy
8        of selecting the lowest responsible bidder.

9    *Id.* at 441.

10        Here too, the licensing factors considered by the federal and state agencies are essentially
11   the same.   The Department was statutorily obligated to confirm that PHEAA is "qualified to
12   provide [the relevant loan servicing services] and will comply with the procedures applicable to
13   the award of such contracts," 20 U.S.C § 1087f(a)(2); that PHEAA has "extensive and relevant
14   experience and demonstrated effectiveness," *id.*; and that PHEAA's services "are provided at
15   competitive prices," *id.* § 1087f(a)(1).   The Department's bidding process—like the U.S. Navy's
16   in *Gartrell*—was also required to comply with the Federal Acquisition Regulations, which require
17   the Department to contract only with "responsible" contractors (based on factors enumerated at 48
18   C.F.R. §§ 9.103–9.104-1).   The DBO, by contrast, is authorized under CSLSA to conduct
19   essentially the same analysis, i.e., whether "the financial responsibility, criminal records,
20   experience, character, and general fitness of the applicant . . . support a finding that the business
21   will be operated honestly, fairly, efficiently, and in accordance with the requirements of this
22   division." Cal. Fin. Code §§ 28106(b)(1), 28120(b).   Application of CSLSA to federal loan
23   servicers, in other words, would allow the DBO to usurp the selection of federal contractors
24   delegated to the Department by Congress.

Ballard Spahr LLP
2029 Century Park East, Suite 800
Los Angeles, California 90067-2909

CASE No. 20-cv-03150: NOTICE OF MOTION AND MOTION OF DEFENDANT TO
DISMISS COMPLAINT PURSUANT TO RULE 12(B)(6); MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT

1

**b.**    **Recent federal precedent establishes that CSLSA is invalid as applied to PHEAA on the basis of obstacle preemption.**

2

The specific question of whether a state student loan servicer licensing regime is impliedly

3

preempted by federal law has been addressed twice in recent years.  *See generally Student Loan*

4

*Servicing Alliance (SLSA) v. District of Columbia*, 351 F. Supp. 3d 26 (D.D.C. 2018); *PHEAA v.*

5

*Perez*, No. 18-cv-1114, 2020 U.S. Dist. LEXIS 76090 (D. Conn. Apr. 30, 2020).  In both instances,

6

the district courts applied the presumption against preemption, but nonetheless concluded that

7

under binding Supreme Court authority and the language of the HEA, the state regulations at issue

8

were preempted.

9

In *SLSA*, the court addressed the applicability of a District of Columbia statute and related

10

regulations purporting to require licensure for federal student loan servicers in the course of their

11

servicing of Direct Loans. [6]  Key provisions of the District's licensing scheme were functionally

12

identical to those present in CSLSA: loan servicers were required to obtain licenses from a District

13

agency, submit to periodic auditing, and respond to all requests for any information deemed

14

"necessary and appropriate."  *SLSA*, 351 F. Supp. 3d at 41; *see also id.* at 62.  The *SLSA* court,

15

however, observed that "Congress' purpose in enacting the HEA was to delegate authority to the

16

*federal government* to select and contract directly with servicers" for the Direct Loan program.  *Id.*

17

at 62 (emphasis added).  Consequently, "[i]t is difficult to see any light between the facts of *Leslie*

18

*Miller*, where obstacle preemption was found to bar state regulation, and the [Direct Loan]

19

servicers here."  *Id*.  More pointedly, the court explained:

20

> Here, there is a risk that the federal government will contract with a servicer after
> evaluating its qualifications under federal law and regulations, and that servicer

21

> nevertheless will be determined to be unqualified by the Commissioner and barred
> from operating in the District of Columbia under the D.C. Law and Final Rules.

22

> The threat of District of Columbia officials' second-guessing the federal
> government's contracting decisions is sufficient under *Leslie Miller* to invalidate

23

> the state licensing scheme as applied to servicers when servicing their [Direct

24

> Loans].  *See United States v. Virginia*, 139 F.3d at 987–90.  Even if the

25

---

[6]    The court also addressed whether the District's licensing regime was preempted with respect

26

to servicing of loans issued under the Federal Family Education Loan (FFEL) program, which
is an issue not presented by this case.

27

28

CASE No. 20-cv-03150: NOTICE OF MOTION AND MOTION OF DEFENDANT TO
DISMISS COMPLAINT PURSUANT TO RULE 12(B)(6); MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT

Ballard Spahr LLP
2029 Century Park East, Suite 800
Los Angeles, California 90067-2909

Commissioner's assessment mirrored the federal government's—based on the same qualifications and culminating in the same outcome—it would not only thwart the federal government's general contracting discretion protected under *Leslie Miller*, but it would directly conflict with HEA's explicit delegation to the [Department] to make that assessment.

*Id.* at 63.  That logic applies with equal force here.

In *Perez*, a federal district court analyzed whether the Connecticut Department of Banking had authority under the state's student licensing statute (or otherwise) to compel PHEAA to produce for inspection a set of documents relating to Direct Loan borrowers.[7]  The Connecticut student loan servicing statute, like CSLSA and the District's licensing regime, imposed requirements relating to licensure and examination on federal student loan servicers.  *Perez*, 2020 U.S. Dist. LEXIS 76090, at *22–23.  Relying primarily on *Leslie Miller* and *Sperry*, the court concluded that "there is no 'ambiguity,' *U.S. Smokeless Tobacco*[ *Mfg. Co. LLC v. City of New York*, 708 F.3d 428, 433 (2d Cir. 2013)]; it is clear that the application of Connecticut's licensing scheme to federal contractors' servicing of Direct Loans presents an obstacle to the federal government's ability to choose its contractors."  *Id.* at *27.  Because the Connecticut Department of Banking (like the DBO) "lacked the authority to compel production of the documents it sought in the absence of the licensing requirement," a finding of preemption as to the licensing requirement meant that "CT DOB did not have authority during the relevant time period to demand" the documents at issue or to impose any penalty on PHEAA for its inability to produce the requested records.  *Id.* at *36.

> c.   **Obstacle preemption bars the DBO's claims because enforcement of CSLSA would supplant the Department's statutory authority to select its federal contractors.**

Like the Connecticut and District of Columbia licensing schemes, CSLSA creates an undeniable obstacle to the federal government's administration of Direct Loans and the TEACH

---

[7]   PHEAA brought the *Perez* action as plaintiff against the Connecticut Department of Banking, leading to a resolution on summary judgment rather than a motion to dismiss.  The underlying facts, apart from the identity of the state agency at issue, are otherwise essentially identical.

CASE No. 20-cv-03150: NOTICE OF MOTION AND MOTION OF DEFENDANT TO DISMISS COMPLAINT PURSUANT TO RULE 12(B)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

Ballard Spahr LLP
2029 Century Park East, Suite 800
Los Angeles, California 90067-2909

Ballard Spahr LLP
2029 Century Park East, Suite 800
Los Angeles, California 90067-2909

1  Program because it permits the DBO, rather than the Department, to decide who can service federal

2  student loans and grants within the state of California.

3       The DBO cannot dispute that under the HEA, Congress has delegated to the Secretary of

4  Education the sole authority to select and contract with loan servicers to service Direct Loans and

5  TEACH Grants.  *See* 20 U.S.C. §§ 1070(b), 1087f.  Pursuant to that authority, the Department has

6  selected PHEAA as one of several Direct Loan servicers and as the exclusive federal contractor

7  charged with administering, under the Department's direction and supervision, the TEACH Grant

8  Program.  The Department has further mandated, as a matter of federal contract, that PHEAA

9  safeguard the many confidential federal records to which it has access.  *See supra at* 5–6.

10      CSLSA, by contrast, ostensibly empowers the DBO with overlapping authority: the DBO

11  may choose to license or not license PHEAA based on its own assessment of criteria that mirror

12  the federal standards, including PHEAA's "financial responsibility, criminal records, experience,

13  character, and general fitness."  Cal. Fin. Code §§ 28106(b)(1), 28120(b).  The DBO may seek,

14  seize, and even "control access" to any servicing-related documentation in the possession of a

15  servicer by "tak[ing] possession" of the materials.  *Id.* § 28108(a)(1), (b).

16      Nor does a federal student loan servicer have the option of avoiding the DBO's authority

17  by not applying for a license at all (and therefore avoid becoming an "applicant" or "licensee"

18  under CSLSA).  In that circumstance, the DBO may (1) order that party to "desist and refrain"

19  from further student loan servicing, *id.* § 28160, (2) impose fines and seek civil penalties, *id.* §§

20  28170–72, and (3) seek appointment of a receiver for defendant and defendant's assets, *id.* §

21  28168(a).

22      In sum, CSLSA purports to vest the DBO with authority to prohibit a federal contractor

23  from fulfilling its federal contractual obligations, either by denying it a license, revoking its

24  license, seizing records, ordering the servicer (if unlicensed) to refrain from loan servicing, or

25  imposing fines and penalties that would make in-state operations financially impossible.  None of

26

27                                                18

28  CASE No. 20-cv-03150: NOTICE OF MOTION AND MOTION OF DEFENDANT TO
    DISMISS COMPLAINT PURSUANT TO RULE 12(B)(6); MEMORANDUM OF POINTS
                         AND AUTHORITIES IN SUPPORT

these powers is compatible with the authority vested by Congress in the Department to choose its

contractual partner for purposes of federal loan and grant servicing.

Because the DBO's licensing authority is itself subject to obstacle preemption, so too are

its auxiliary powers to examine or demand records of licensees.  *See Perez*, 2020 U.S. Dist. LEXIS

76090, at *36.  In other words, even if the demand alone did not inherently conflict with federal

directives—which it does, *see infra* at 21–23—the DBO is without authority to make it because

the predicate licensing authority stands as an obstacle to the full implementation of the HEA.

Because the DBO's claims for injunctive and declaratory relief would both require a finding that

CSLSA is not preempted, those claims must be dismissed.[8]

### 2.    CSLSA is invalid as a matter of impossibility preemption.

The Supreme Court has identified a second test for conflict preemption: a state law is

preempted where compliance with both state and federal law is physically impossible.  *See*

*Freightliner Corp. v. Myrick*, 514 U.S. 280, 287 (1995) (applying preemption where it is

"impossible for a private party to comply with both state and federal requirements").  By that

metric, too, CSLSA is preempted.

This issue, like the question of obstacle preemption, has already been litigated on identical

facts.  In *Perez*, PHEAA brought suit against the Connecticut Department of Banking for a

declaratory judgment on the issue of preemption specifically because it had been placed in the

untenable position of having received a document demand from Connecticut that it had been

directed to refuse by the Department.  2020 U.S. Dist. LEXIS 76090, at *15–16.  There, as here,

---

[8]    PHEAA's position is bolstered by the Department's March 2018 notice entitled "Federal Preemption and State Regulation of the Department of Education's Federal Student Loan Programs and Federal Student Loan Servicers" (the Preemption Notice).  83 Fed. Reg. 10619 (dated Mar. 12, 2018).  In the Preemption Notice, the Department explains that certain state requirements imposed on student loan servicers, including state regulations requiring licensure of federal contractors, conflict with the Department's authority to select contractors and to determine whether contractors are in compliance with federal law.  *Id.* at 10620.  The Department of Justice, on behalf of the Department of Education, has filed multiple Statements of Interest reiterating that position.  *See* Burke Decl., Ex. E, *PHEAA v. Perez*, No. 18-cv-1114 (D. Conn.); Ex. F, *Cmwlth. of Mass. v. PHEAA*, No. 1784-CV-02682 (Mass. Super. Ct.); Ex. G, *SLSA v. District of Columbia*, No. 18-cv-640 (D.D.C.).

Ballard Spahr LLP
2029 Century Park East, Suite 800
Los Angeles, California 90067-2909

CASE No. 20-cv-03150: NOTICE OF MOTION AND MOTION OF DEFENDANT TO
DISMISS COMPLAINT PURSUANT TO RULE 12(B)(6); MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT

the Department relied on both its ownership of the records at issue and the Privacy Act as grounds for its direction to refuse the request. *Compare id. with* April 24, 2020 Letter from A. Sierra to W. Horsey. Connecticut's primary response was that the Department, in its discretion, could have opted to permit PHEAA to disclose the records under certain enumerated exceptions to the Privacy Act. But as the court observed, the question presented was whether *PHEAA* could have complied with both state and federal law, not whether the Department, in its discretion, could have taken a course that would have eliminated the conflict. 2020 U.S. Dist. LEXIS 76090, at *39–40. As a result, the court concluded that "impossibility preemption also prohibits any attempt by [Connecticut] to enforce its document demands." *Id.* at *42.

The situation here is equally plain. The DBO has directed PHEAA to produce federal borrower and grant recipient records that indisputably constitute Department property and fall within the parameters of the Privacy Act. The Department, relying on its interpretation of the Privacy Act as well as its ownership of the records, has directed PHEAA not to produce those records (both in general under the Privacy Act Memo and specifically with respect to the DBO's document demand). *See* April 24, 2020 Letter from A. Sierra to W. Horsey; Servicing Contract at Att. A-2, ¶ 80(h) (requiring PHEAA "to comply with Federal and [the Department's] records management policies, including those policies associated with the safeguarding of records covered by the Privacy Act of 1974"); Privacy Act Memo, at 1–2. If PHEAA were to produce the records despite the Department's directive, it would stand in violation of its federal contract, and very likely also would stand in violation of the Privacy Act. If PHEAA does not produce the records, the DBO threatens to impose monetary fines and penalties as well as to suspend or revoke its loan servicing license, which ostensibly would bar PHEAA from fulfilling its federal contractual loan-servicing obligations in the State of California.

On these facts, California law must yield to federal law. PHEAA is entitled to dismissal of both counts of the Complaint on grounds of impossibility preemption.

Ballard Spahr LLP
2029 Century Park East, Suite 800
Los Angeles, California 90067-2909

20

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Ballard Spahr LLP
2029 Century Park East, Suite 800
Los Angeles, California 90067-2909

**B.      The DBO's claims are barred by the intergovernmental immunity doctrine.**

Under the intergovernmental immunity doctrine—which, like preemption, is grounded in the Supremacy Clause—the federal government is immune from suit under any state or local law that would directly or discriminatorily regulate the federal government or interfere with the execution of federal functions.  *Goodyear Atomic Corp. v. Miller*, 486 U.S. 174, 180–81 (1988). This immunity extends to private contractors carrying out federal functions.  *See Boeing Co. v. Movassaghi*, 768 F.3d 832, 836 (9th Cir. 2014) (granting immunity to private contractor where state law would have impeded the performance of a federal function); *Black Hills Power & Light Co. v. Weinberger*, 808 F.2d 665, 669 n.4 (8th Cir. 1987) ("[A] state cannot diminish the constitutional authority of the United States government by regulating the parties with whom it may contract.").  "Direct regulation"—the basis for PHEAA's reliance on the doctrine here—occurs when a state government interferes with federal functions by mandating that the federal government or its contractor comply with impermissible state-law procedures or standards.  *See, e.g.*, *Boeing*, 768 F.3d at 840 (law directly regulated the functions of federal government where it mandated how defendant could render its contractual services); *United States v. Virginia*, 139 F.3d at 988–89 (law directly regulated federal government by imposing requirements on potential federal contractors).

The Ninth Circuit's application of intergovernmental immunity in *Boeing* is instructive. There, the federal government had engaged Boeing to remediate a private parcel of land on which the federal government had conducted nuclear research and rocket testing.  *Id.* at 834–35. California, unsatisfied with the federal government's proposal for the clean-up, had enacted a site-specific environmental clean-up law imposing higher standards than those contained in the federal contract.  *Id.* The Ninth Circuit invalidated the California law on intergovernmental immunity grounds, finding that the California law impermissibly "mandates the ways in which Boeing renders services that the federal government hired Boeing to perform" and "replaces the federal cleanup standards that Boeing has to meet to discharge its contractual obligations to [the

21

Ballard Spahr LLP
2029 Century Park East, Suite 800
Los Angeles, California 90067-2909

Department of Energy] with the standards chosen by the state." *Id.* at 840.  On those grounds, the Ninth Circuit found that the law "regulates not only the federal contractor but the effective terms of [the] federal contract itself." *Id.*

Here, California similarly attempts to supplant PHEAA's Servicing Contract with a different agreement—one under which the DBO has the authority to "access, receive, and use any books, accounts, records, files, documents, information, or evidence . . . relating to . . . servicing student loans," Cal. Fin. Code § 28108(a)(1), and "take possession of [PHEAA's] documents and records," *Id.* § 28108(b).  These provisions conflict with PHEAA's contractual duty to safeguard federal borrower and grant recipient records.  And to the extent that the DBO has functional veto authority over the Department's selection of PHEAA as its servicer by virtue of the DBO's ability to revoke PHEAA's loan servicer license and bar it from servicing federal loans in California, the state's effort to directly regulate the federal government is even more pronounced.

CSLSA also constitutes an impermissible effort to directly regulate the federal government because of its impact on federal property.  *See, e.g.*, *Blackburn v. United States*, 100 F.3d 1426, 1435 (9th Cir. 1996) (holding that state law would impermissibly regulate "the Federal Government's operation of its property at Yosemite").  The DBO's claims are directed at PHEAA's administration of the Direct Loan and TEACH Programs, both of which require PHEAA to administer federal property at the Department's direction.  *See* 34 C.F.R. § 686.43; 20 U.S.C. § 1087a.  The DBO's authority to determine whether PHEAA may fulfill its federal obligations will therefore have a direct impact on federal property.  The doctrine of intergovernmental immunity therefore requires dismissal of the DBO's claims seeking injunctive and declaratory relief based on the supposed validity of CSLSA.

**C.    The DBO's complaint should be dismissed with prejudice because the DBO cannot cure the defects through amendment.**

PHEAA requests that this Court grant PHEAA's motion to dismiss with prejudice.  *See Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.*, 368 F.3d 1053, 1061 (9th Cir. 2004) (motion

22

to dismiss should be granted with prejudice when the claims subject to the motion are futile because they cannot be saved by amendment).  Because the DBO's claims are predicated entirely on an existing statutory scheme, and because PHEAA's defenses stem from its obligations under federal law and contract, the DBO's claims cannot be saved by amendment.

## V.    CONCLUSION

For the foregoing reasons, the Court should grant PHEAA's motion to dismiss based on obstacle preemption, impossibility preemption, and intergovernmental immunity, and dismiss the DBO's Complaint with prejudice.

DATED:     May 15, 2020                              Respectfully submitted,

*/s/ Marcos D. Sasso*
John C. Grugan (PA 83148)
gruganj@ballardspahr.com
*(admitted pro hac vice)*
Thomas F. Burke (PA 320311)
burket@ballardspahr.com
*(admitted pro hac vice)*
**BALLARD SPAHR LLP**
1735 Market St., 51st Floor
Philadelphia, PA 19103-7599
Telephone: (215) 864-8500
Facsimile: (215) 864-8999

Marcos D. Sasso (SBN 228905)
sassom@ballardspahr.com
**BALLARD SPAHR LLP**
2029 Century Park East, Suite 800
Los Angeles, CA  90067-2909
Telephone: (424) 204-4400
Facsimile: (424) 204-4350

*Attorneys for Defendant Pennsylvania Higher Education Assistance Agency*

Ballard Spahr LLP
2029 Century Park East, Suite 800
Los Angeles, California 90067-2909

23

**PROOF OF SERVICE**

  I am a resident of the State of California, over the age of eighteen years, and not a party to the within action.  My business address is **BALLARD SPAHR LLP**, 2029 Century Park East, Suite 800, Los Angeles, CA 90067-2909.  On May 15, 2020, I served the within documents:

**NOTICE OF MOTION AND MOTION OF DEFENDANT TO DISMISS COMPLAINT PURSUANT TO RULE 12(B)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT; [PROPOSED] ORDER**

☐  **BY FAX**: by transmitting via facsimile the document(s) listed above to the fax number(s) set forth below on this date before 5:00 p.m.

☐  **BY HAND:**  by personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

☑  **BY MAIL**:  by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Los Angeles, California addressed as set forth below.

☐  **BY E-MAIL**: by attaching an electronic copy of the document(s) listed above to the e-mail address listed below.

☐  **BY OVERNIGHT MAIL**:  by causing document(s) to be picked up by an overnight delivery service company for delivery to the addressee(s) on the next business day.

☐  **BY PERSONAL DELIVERY**:  by causing personal delivery by First Legal Network of the document(s) listed above to the person(s) at the address(es) set forth below.

Mary Ann Smith          *Attorneys for Plaintiff*
Deputy Commissioner        *The People of the State of California*
Department of Business Oversight
One Sansome Street, Suite 600
San Francisco, California 94104-4448
Telephone: (415) 972-8547
Facsimile:  (415) 972-8550

  I am readily familiar with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

  I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

  Executed on May 15, 2020, at Los Angeles, California.

_____
         Shari L. Green

Ballard Spahr LLP
2029 Century Park East, Suite 800
Los Angeles, California 90067-2909