MARY ANN SMITH
Deputy Commissioner
DANIEL P. O'DONNELL
Assistant Chief Counsel
PAUL YEE (State Bar No. 142381)
Senior Counsel
MARLOU DELUNA (State Bar No. 162259)
Senior Counsel
KELLY SUK (State Bar No. 301757)
Counsel
Department of Business Oversight
One Sansome Street, Suite 600
San Francisco, California 94104-4448
Telephone: (415) 972-8544
Facsimile: (415) 972-8550
Email: Paul.Yee@dbo.ca.gov

*Attorneys for the People of the State of California*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE OF THE STATE OF CALIFORNIA, by and through the Commissioner of Business Oversight,<br><br>Plaintiff,<br><br>v.<br><br>PENNSYLVANIA HIGHER EDUCATION ASSISTANCE AGENCY, d/b/a/ FedLoan<br><br>Defendant. | CASE NO. 20-cv-03150-MMC<br><br>**OPPOSITION OF PLAINTIFF TO MOTION OF DEFENDANT TO DISMISS COMPLAINT PURSUANT TO RULE 12(b)(6)**<br><br>**<u>Hearing</u>**<br>Date: June 26, 2020<br>Time: 9:00 a.m.<br>Courtroom: 7<br>Honorable Maxine M. Chesney<br><br>Complaint Filed: April 1, 2020<br>Complaint Removed: May 8, 2020 |

State of California - Department of Business Oversight

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

PAGE

I.    STATEMENT OF THE ISSUES TO BE DECIDED                                          1

II.   FACTS                                                                          2

      A. The federal student loan landscape                                         2

      B. PHEAA and the TEACH Grant program                                          4

      C. California's Student Loan Servicing Act                                     5

      D. California's standard examination of PHEAA's servicing process             6

      E. The Complaint                                                              8

III.  OBJECTION TO INTRODUCING PHEAA's CONTRACT IN SUPPORT

      OF PHEAA'S MOTION TO DISMISS                                                   8

IV.   LEGAL STANDARD                                                                9

V.    ARGUMENT                                                                      10

      A.  The CSLSA is not preempted by the HEA                                     10

          1.   The Presumption Against Preemption Applies to the CSLSA             11

          2.   Congress did not clearly and manifestly express an intent to preempt
               CSLSA                                                               11

               a.   Obstacle preemption does not apply under the facts of this case   12

               b.   Impossibility preemption does not apply                        17

      B.  The CSLSA does not violate intergovernmental immunity principles          20

VI. CONCLUSION                                                                     22

State of California - Department of Business Oversight

1

TABLE OF AUTHORITIES

2

**CASES:**                                                                                        **PAGE**

3

*Arizona v. United States*

4

567 U.S. 387, 399 (2012) …………………………………………………………...10,12

5

*Ashcroft v. Iqbal*

556 U.S. 662, 678 [internal cites omitted] (2009)......................................................*9*

6

7

*Boeing Co. v. Movassaghi*

768 F3d 832, 839-43 (9ᵗʰ Cir. 2014) …………………………………….…………20,21

8

9

*California v. ARC Am. Corp*

490 U.S. 93, 101 (1989) ...………………………………………………………….. 11

10

*Chae v. SLM Corp*

11

593 F.3d. 936, 944 (9ᵗʰ Cir. 2010) ……………………………………………….... 11

12

*Chamber of Commerce of U.S. v. Whiting*

13

563 U.S. 582, 607 (2011) ……………………………………………………………. 11

14

*Chamberlan v. Ford Motor Co.,*

314 F. Supp. 2d 953, 957 (N.D. Cal. 2014)……………………………………….... 14

15

16

*Chicanos Por La Causa, Inc. v. Napolitano*

558 F.3d 856, 863 (9th Cir. 2009) ……………………………………….................14

17

18

*Coto Settlement v. Eisenberg*

593 F3d 1031, 1038. (9ᵗʰ Cir. 2010) ...………………………………………………. *9*

19

20

*Consumer Finance Protection Bureau v. Navient*

 3:17cv101, 2018 WL 3824367 (M.D. Pa. 2018) ...……………………………………*18*

21

22

*English v. Gen. Elec. Co*

496 U.S. 72, 90 (1990) ...……………………………………………………………14

23

*Gade v. National Solid Wastes Management Ass'n*

24

505 U.S. 88, 111, 112 (1992)…………………………………………………… 10

25

*Gartrell Constr. Inc. v. Aubry*

940 F2d 437, 439 (9ᵗʰ Cir. 1991) ……………………………………………………13

26

27

*Haley v. City of Boston*

657 F3d 1031, 1038. (1ˢᵗ Cir. 2011) ...……………………………………………… *9*

28

-ii-

State of California - Department of Business Oversight

*Hillsborough County v. Automated Med. Labs., Inc.*
471 U.S. 707, 713 (1985) ……………………………………………………11,12

*Knox v. Brnovich*,
907 F.3d 1167, 1173-74 (9thCir. 2018)……………………………………..11

*Laxalt v. McClatchy*
809 F.2nd 885, 888-89 (D.C. Cir. 1987)……………………………………………*18*

*Leslie Miller Inc. v. Arkansas*
352 U.S. 187, 190 (1956) …………………………………………….…*passim*

*Lazy Y Ranch Ltd. v. Behrens*
546 F.3d 580, 588 (9th Cir. 2008) ………………………………………….10

*Medtronic Inc. v. Lohr*
518 U.S. 470 (1996) …………………………………………………….10, 16

*In re Nat'l Security Agency Telecomms. Records Litig.*
633 F. Supp. 2d 892, 903 (N.D. Cal. 2007)………………………………..20

*North Dakota v. United States*……………………………………………   20, 21
495 U.S. 423, (1990)

*PHEAA  v. Perez*,
3:18-cv-114 (MPS) at *9, 2020 WL 2079634 (D. Conn. April 30, 2020)…………………..16

*Savage v. Jones*
225 U.S. 501, 533 (1912)) ……………………………………………… .…14

*Sickle v. Torres Advanced Enter. Sols, LLC*
884 F.3d 338, 346 (D.C. Cir. 2018). ………………………………………...16

*Student Loan Servicing Alliance (SLSA)  v.  Taylor,*……………………………………*9,11,16*
351 F.Supp.3d 26, 43,63 (2018)

*Sperry v. State of Fla. ex rel. Florida Bar,* …………………………………………14
373 U.S. 379, 385 (1963)

*Swierkiewicz  v. Sorema N.A.,* ………………………………………………10
534 U.S. 506, 508 n.1 [internal cites omitted]  (2002).

*The Wireless Ass'n v. City of Berkeley*, Cal.,
 928 F.3d 832, 849 (9th Cir. 2019)……………………………………………10

State of California - Department of Business Oversight

*United States v. City of Arcata*,
629 F.3d 986, 991-92 (9th Cir. 2010)……………………………………………………1, 21

*United States v. California*, ………………………………………………………………11
314 F.Supp.3d 1077 (E.D. Cal. 2018).

*United States v. California*, ……………………………………………………………15, 20
921 F.3d at 885-86 (9th Cir. 2019).

*United States v. Town of Windsor, Conn.*, …………………………………………………14
765 F.2d 16 (2nd Cir. 1985),

*United States v. Virginia*, ………………………………………………………………...14
139 F.3d 984 (4th Cir. 1988),

*Wyeth v. Levine*, ………………………………………………………………………10,11
555 U.S. 565 (2009).

*Virginia Uranium, Inc. v. Warren*,
139 S. Ct. 1894, 1907 (2019)………………………………………………………………12

**FEDERAL STATUTES**

Higher Education ACT (HEA)

Securities Act of 1933
15 U.S.C. §§ 77a et seq…………………………………………………………………………12

20 U.S.C. § 1070(a)(4)………………………………………………………………………..2

*20 U.S.C. §§ 1087a* et seq…………………………………………………………………… 4

*20 U.S.C. §§ 1087f,subd.(a)*………………………………………………………………  4

20 U.S.C. §1088,*subd.*(c)……………………………………………………………………4

**Privacy Act of 1974**

5 U.S.C. § 552a *et seq.*  ……………………………………………………………………..7

5 U.S.C. § 552(a), (b)…………………………………………………………………………..2

5 U.S.C. § 552a(4)……………………………………………………………………………18

5 U.S.C. § 552a(b)(7)…………………………………………………………………………7

5 U.S.C. § 552a(b)(11)………………………………………………………………………18,19

Federal Family Education Loan Program
("FFELP")
*20 U.S.C. §§ 1071–1087.4*……………………………………………………………………*3*

CASE No. 20-cv-03150-MMC:  OPPOSITION OF PLAINTIFF TO MOTION OF DEFENDANT
TO DISMISS COMPLAINT PURSUANT TO RULE 12(b)(6)

State of California - Department of Business Oversight

William D. Ford Federal Direct Loan Program ("Direct Loans")
*20 U.S.C. §§ 1087a–1087j*………………………………………………………………………3

College Cost Reduction and Access Act
*20 U.S.C. § 1070 et seq*………………………………………………………………………3

*Teacher Education Assistance for College and Higher Education
(TEACH) Grant Program* (March 2018)…………………………………………………..*passim*

**STATE STATUTES**

California Financial Code

Cal. Fin. Code §§ 28100 *et seq*……………………………………………………………..2

Cal. Fin. Code § § 28100………………………………………………………….……….6

Cal. Fin. Code § 28100(f)…………………………………………………………….6,11

Cal. Fin. Code § 28102, et seq……………………………………………………..……6

Cal. Fin. Code § 28102*, subd.* (m)(1).)……………………………………………………6

Cal. Fin. Code § 28108……………………………………………………………………8

Cal. Fin. Code § 28130, *subd.* (b) ……………………………………………………6,8

Cal. Fin. Code § 28130, *subd.* (c)………………………………………………..……6,8

Cal. Fin. Code § 28130, *subd.* (d)………………………………………………………6,8

California Law, Corporate Securities Law
Corporations Code §§ 25000 et seq…………………………………………………………12

**RULES**

Federal Rule Civil Procedure 12(b)(6)…………………………………………………..*passim*

**REGULATIONS**

Federal Reg. 10619-20……………………………………………………………..…….19

Federal Reg. 60686…………………………………………………………………...19

**OTHERS AURTHORITES**

*Pub. L. No. 89-329,79 Stat 1219*…………………………………………………….... 3

CASE No. 20-cv-03150-MMC:  OPPOSITION OF PLAINTIFF TO MOTION OF DEFENDANT
TO DISMISS COMPLAINT PURSUANT TO RULE 12(b)(6)

State of California - Department of Business Oversight

*Better Management of Federal Grant and Loan Forgiveness Programs for Teachers Needed to Improve Participant Outcomes* (Feb. 24, 2015), available at http://www.gao/gov/products/GAO-15-314; ……………………………………………………………………………………4

*Study of the Teacher Education Assistance for College and Higher Education (TEACH) Grant Program* (March 2018), available at http://www2.ed.gov.rschstat/eval/highered/teach-grant/final-report.pdf.) ………………………………………………………………………………4

Rubenstein, Supremacy Inc.
67 UCLA L.Rev. 4 (2020) pg. 73-74……………………………………………………………22

CASE No. 20-cv-03150-MMC:  OPPOSITION OF PLAINTIFF TO MOTION OF DEFENDANT TO DISMISS COMPLAINT PURSUANT TO RULE 12(b)(6)

State of California - Department of Business Oversight

## I.  STATEMENT OF THE ISSUES TO BE DECIDED

The California Department of Business Oversight (DBO[1]) has a unique interest in examining Pennsylvania Higher Education Assistance Agency (PHEAA)'s servicing of the TEACH Grant reconsideration program under the recently enacted Student Loan Servicing Act (CSLSA). [2]  A 2015 U.S. Government Accountability Office (GAO) report and a 2018 U.S. Department of Education (Department) report show that between 2008 and 2018, PHEAA's servicing failures caused grants held by more than 10,000 TEACH Grant recipients to be erroneously and improperly converted into federal loans with interest.  Because of PHEAA's servicing failures, the Department announced a TEACH Grant reconsideration program on December 2018, whereby recipients whose TEACH Grants were erroneously converted to loans could apply for reconsideration.

In 2016, the California Legislature enacted the CSLSA in response to this and other high-profile mismanagement in this sector of the financial marketplace. This action was undertaken pursuant to the state's police power to protect consumers and is comparable to regulation the state otherwise undertakes to regulate participants in the financial industry operating within California. Pursuant to that authority, DBO requested information and certain records of PHEAA, and PHEAA refused to comply with this request for information.

PHEAA has filed a motion to dismiss DBO's complaint, which the People of the State of California filed due to PHEAA's refusal to provide relevant documents and data relating to its administration of the TEACH Grant reconsideration program. This is a case of first impression on the narrow issue relating to PHEAA's servicing of the TEACH Grant reconsideration program.  The question presented here is whether DBO is entitled to data and documents relating to the TEACH Grant reconsideration program under its inherent police powers to enforce consumer protections underlying the CSLSA.

PHEAA maintains that the complaint should be dismissed pursuant Rule 12(b)(6) because the CSLSA is invalid under the Supremacy Clause of the U.S. Constitution.  None of the three grounds PHEAA identifies—1) obstacle preemption, 2) impossibility preemption, and 3) intergovernmental immunity—support dismissal of the complaint at this stage of the proceedings.

CASE No. 20-cv-03150-MMC:  OPPOSITION OF PLAINTIFF TO MOTION OF DEFENDANT TO DISMISS COMPLAINT PURSUANT TO RULE 12(b)(6)

First, the provisions of CSLSA at issue in this case do not inhibit implementation and execution of the loan programs authorized under the federal Higher Education Act (HEA), *20 U.S.C. §§ 1087a* et seq.  The complaint stems solely from DBO's oversight of PHEAA's handling of the TEACH Grant reconsideration program, and as such does not undermine the policies and execution of the reconsideration program, which DBO strongly supports.  Furthermore, unlike the federal contractors in the cases upon which PHEAA relies, DBO's document request is not an enforcement action, nor has it otherwise taken any other action against PHEAA's license that prevents PHEAA from fulfilling its responsibilities as a federal contractor. Under applicable Ninth Circuit precedent, the mere burden on a federal contractor of responding to requests for information or inspections pursuant to state law is insufficient to trigger obstacle preemption.

Second, invoking impossibility preemption, PHEAA argues that compliance with both state and federal obligations would be a physical impossibility.  The allegations and other information before the Court do not, however, support this contention.  PHEAA can, in fact, comply with both the Privacy Act of 1974, 5 U.S.C. § 552a, and DBO's request. Furthermore, PHEAA's contract is not  properly before this Court on this motion to dismiss, and, in any event, reinforces that PHEAA is expected to comply with applicable state law.

Third, under the doctrine of governmental immunity, PHEAA argues that the CSLSA directly regulates the federal government through its contractor. However, this argument misapprehends applicable case law—because CSLSA regulates all "persons" who service student loans, it does not directly regulate the federal government.

## II.   FACTS

### A.  The federal student loan landscape.

In an effort to expand access to higher education across the nation, the federal government enacted the Higher Education Act (*20 U.S.C. §§ 1001–1155*) in 1965.  Under the Higher Education Act and related federal statutes and regulations, the U.S. Department of Education operates various

---

[1]  Plaintiff agrees with PHEAA to be referred to as the DBO (Department of Business Oversight).
[2]  California Financial Code §§ 28100 et seq.  The act is known as the "Student Loan Servicing Act" but DBO will refer to it for this motion as "CSLSA" to maintain consistency with the moving papers.

CASE No. 20-cv-03150-MMC:  OPPOSITION OF PLAINTIFF TO MOTION OF DEFENDANT TO DISMISS COMPLAINT PURSUANT TO RULE 12(b)(6)

State of California - Department of Business Oversight

State of California - Department of Business Oversight

1   programs to help students finance post-secondary education.  (*Pub. L. No. 89-329, 79 Stat. 1219*).

2   These include two main federal student loan programs: The Federal Family Education Loan Program

3   ("FFELP") (*20 U.S.C. §§ 1071–1087.4*), a system of loan guarantees intended to encourage private

4   lenders to lend money to students, and the William D. Ford Federal Direct Loan Program ("Direct

5   Loans") (*20 U.S.C. §§ 1087a–1087j*), through which the federal government lends money to

6   students directly.  In 2010, Congress passed the Student Aid and Fiscal Responsibility Act, which

7   ended new loan originations under the FFELP and shifted new loans primarily to Direct Loans.  As a

8   result of these programs and laws, the federal government now makes, owns, or guarantees 92

9   percent of all student loans in the United States.  Compl. ¶ 11.

10      In 2007, under the federal College Cost Reduction and Access Act (*20 U.S.C. § 1070 et seq.*),

11   Congress established the Teacher Education Assistance for College and Higher Education (TEACH)

12   Grant Program to aid and incentivize highly qualified teachers to pursue teaching careers in low-

13   income, underserved communities without incurring crippling student loan debt.  Compl. ¶13

14      Under the TEACH program, TEACH Grants of up to $4,000 per year are awarded to students

15   pursuing an undergraduate or master's degree in education.  To qualify, TEACH Grant recipients

16   must display "high academic aptitude" by meeting certain minimum academic criteria as

17   demonstrated through GPA or college admissions tests, and must agree to teach for at least four

18   complete academic years within eight years after completing a course of study in a "high-need

19   field," such a mathematics, science, special education, or foreign language, in a low-income school.

20   Compl. ¶ 14.

21      If the TEACH Grant recipient fails to complete the requisite service (teaching four years in a

22   high-need subject in a low-income school) or otherwise fails to meet the eligibility criteria, the

23   grants are converted into federal Direct Loans, which the recipient is obligated to repay with interest

24   charges calculated back to the date each TEACH Grant was disbursed. Compl. ¶ 15.

25      In order to show ongoing compliance with the TEACH Grant program, recipients must

26   submit annual certification to show they have completed a full school year of qualifying service.

27   Failure to annually submit proper certification forms results in a conversion of the TEACH Grants to

28   federal loans with interest.  Compl. ¶ 16.

CASE No. 20-cv-03150-MMC:  OPPOSITION OF PLAINTIFF TO MOTION OF DEFENDANT
TO DISMISS COMPLAINT PURSUANT TO RULE 12(b)(6)

State of California - Department of Business Oversight

1    Under the Higher Education Act, the Department contracts out the servicing of federal

2    student loans to private companies (such as PHEAA) who must, among other things, receive and

3    apply periodic loan payments, maintain records, advise borrowers and handle repayment options,

4    facilitate payoff, handle delinquent accounts, and administer loan forgiveness programs.  (*See 20*

5    *U.S.C. § 1088, subd. (c); 20 U.S.C. § 1087f, subd. (a).)*  Compl.  ¶ 17.

6    From 2008, when the first TEACH Grants were awarded, through 2012, the Department

7    contracted out the administration of the TEACH program to ACS, then a division of Xerox.  In 2012,

8    amid allegations of improper servicing practices, including the improper conversion of thousands of

9    TEACH Grants into federal loans by ACS, the Department awarded the exclusive administration of

10   the TEACH Grant program to PHEAA.  Compl. ¶ 18.

11   **B.  <u>PHEAA and the TEACH Grant Program</u>**

12   PHEAA services federal student loans and administers federal loan programs under the name

13   FedLoan Servicing.  PHEAA manages over a quarter of the nation's $1.4 trillion student loan debt

14   on behalf of various lenders for millions of borrowers nationally.  As of December 2018, PHEAA

15   services the loans of over 900,000 California student loan borrowers, amounting to over $35 billion

16   in student loan debt with an average balance of $37,000.  Compl. ¶ 20.

17   After assuming exclusive responsibility for administering the TEACH Grant program,

18   PHEAA continued the mismanagement of its predecessor ACS by failing to timely and properly

19   process teachers' annual certification forms and failing to provide teachers sufficient time to

20   resubmit or correct forms when additional information was required.  As a result, teachers who

21   believed they had satisfied all their administrative obligations of submitting certifications for their

22   TEACH Grants had their grants erroneously converted into federal loans.  Compl. ¶¶ 21-22.

23   Between 2008 and 2018, misadministration of the TEACH Grant program and servicing

24   failures have caused grants held by more than 10,000 TEACH Grant recipients to be erroneously and

25   improperly converted into federal loans with interest.  (U.S. Government Accountability Office,

26   *Better Management of Federal Grant and Loan Forgiveness Programs for Teachers Needed to*

27   *Improve Participant Outcomes* (Feb. 24, 2015), available at http://www.gao/gov/products/GAO-15-

28   314; U.S. Department of Education, *Study of the Teacher Education Assistance for College and*

*Higher Education (TEACH) Grant Program* (March 2018), available at

http://www2.ed.gov.rschstat/eval/highered/teach-grant/final-report.pdf.)  Compl. ¶ 23.

In December 2018, after more than a year of public scrutiny and amidst pressure from the media, advocates, and federal lawmakers, the Department acknowledged the erroneous TEACH Grant-to-loan conversions and announced a TEACH Grant reconsideration program, in which recipients whose TEACH Grants were erroneously converted to loans could apply for reconsideration.  TEACH Grant reconsideration process, available at https://studentaid.gov/understand-aid/types/grants/teach/teach-reconsideration.  Despite PHEAA's role in the mismanagement of the TEACH Grant servicing in 2012 and mismanaged at least a portion of TEACH Grants, the Department designated PHEAA to administer the reconsideration process.  Without any additional accompanying oversight by the Department of the reconsideration program, PHEAA was left to implement its own policies and procedures around this remediation.  Compl. ¶¶ 25-26.

Since the Department's 2018 announcement that PHEAA will administer the reconsideration program, neither PHEAA nor the Department released public information identifying the success of this initiative or assessing the number of teachers who continue to repay TEACH Grants that were erroneously converted into loans.  Compl. ¶ 27.

As a result, DBO does not know how many of the approximately 10,000 TEACH Grant reconsideration candidates in California have had their loans denied reconversion back into grants or what criteria was used to assess the reconsideration process.

**C.  California's Student Loan Servicing Act**

The CSLSA was signed into law in 2016 and became operational on July 1, 2018.  In enacting the CSLSA, the California Legislature found and declared that "student loan debt is a national crisis" and highlighted the paramount interests of over 4,000,000 California student loan borrowers, and the imperative need for state oversight of student loan servicers, who serve as a "critical link between borrowers and lenders in managing accounts, proceeding payments, and communicating directly with borrowers."  The Legislature also noted there is "no consistent, market wide federal standards for student loan servicing."  (*Id*. at subdivision (a)-(d).)  Compl. ¶ 31.

CASE No. 20-cv-03150-MMC:  OPPOSITION OF PLAINTIFF TO MOTION OF DEFENDANT
TO DISMISS COMPLAINT PURSUANT TO RULE 12(b)(6)

State of California - Department of Business Oversight

California has an immense interest in making sure California student loan borrowers are protected from harmful and abusive practices.  As of the end of 2018, Californians owed $133 billion in student loans, more than double the amount owed one decade earlier.  In 2017, 50 percent of California students graduated from college with student loan debt, and those students owed an average of nearly $22,785 each. Compl.  ¶ 32.

The CSLSA applies to all persons that manage or "service" student loans in California, designates the DBO to administer and enforce its provisions, and has three primary components: (i) licensure; (ii) examination; and (iii) enforcement.  (Fin. Code, § § 28100, 28102, et seq.)   Compl. ¶ 33.  The CSLSA broadly defines "student loan" to mean "any loan made solely for use to finance a postsecondary education and costs of attendance at a postsecondary institution . . . ."  (Fin. Code, § 28102, subd. (m)(1).)  This definition encompasses both private student loans made by commercial institutions, such as banks, credits unions, and other types of lending institutions, and federal student loans.  PHEAA became licensed with the Department on November 5, 2018 and therefore voluntarily availed themselves to the CSLSA.  Compl. ¶34.

**D.** **California's standard examination of PHEAA's servicing process.**

DBO scheduled an on-site joint standard examination of PHEAA's loan servicing process on the weeks of January 13, 2020 and February 3, 2020, in conjunction with the Consumer Financial Protection Bureau and the Connecticut Department of Banking. Compl. ¶ 37.

On December 12, 2019, in anticipation of the upcoming on-site examination on January 13, 2020, the DBO sent to PHEAA an examination request list requesting information, documents and complaints surrounding the TEACH Grant program.  See Declaration of Paul Yee, (Yee Decl.), Ex.1, Supplemental Information Request List.  Compl. ¶ 38.  PHEAA did not provide the data.

On January 13, 2020, and again on February 3, 2020, the DBO conducted an on-site examination of PHEAA, and again requested the TEACH Grant information and documents.  PHEAA again declined to produce the requested information on both visits.  Compl. ¶ 40.

On February 6, 2020, PHEAA provided a written response to the Commissioner, declining to produce the requested TEACH Grant documents and information; PHEAA cited two separate bases for its refusal.  First, PHEAA asserted that the DBO's examination authority under the California

Student Loan Servicing Act was preempted by the federal Higher Education ACT (HEA).  Second, PHEAA stated that the student borrower records, while in its physical possession, are legally owned by the Department, and PHEAA is prohibited from releasing them to the DBO pursuant to its contract with the Department and the federal Privacy Act of 1974 ("The Privacy Act") (5 U.S.C. § 552a *et seq.*).  Yee Decl. Ex. 2, February 2, 2020 email.  In their opinion, PHEAA explained that they were expressly prohibited from sharing the TEACH Grant data or documents with any state regulator and in support of their position, attached the Department's December 27, 2017 memo, "Ownership of and Access to U.S. Department of Education Records and Data" (Memo)  Yee Decl. Ex. 3, Memorandum.  PHEAA also directed DBO to seek the information directly from the Department.

On February 13, 2020, pursuant to instruction contained in the Memo, the DBO by Senior Counsel William Horsey, wrote to the Department requesting the data and documents related to the TEACH Grant program including information relating to the reconsideration program.  The DBO explained that request was pursuant to the law enforcement exception to the Privacy Act of 1974, 5 U.S.C. § 552a(b)(7)[3].  Yee Decl. Ex. 4, February 13, 2020 Horsey Letter.

On April 24, 2020, the Department replied indicting that it would not provide the data and documents pursuant to the law enforcement exception because the Department is not a licensee, but more importantly, because the Department determined that the state law regulating Direct Loan servicing are preempted by Federal law.  Yee Decl. Ex. 5, PHEAA letter.  The Department's letter cited as authority its own Preemption Notice found at 83 Fed.Reg. 10620.  Yee Decl. Ex. 6, March 12, 2020 Preemption Notice.

---

[3]  The Privacy Act, U.S.C. § 552a(b) provides in pertinent part:  "No agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or which the prior written consent of, the individual to whom the record pertains, unless the disclosure of the record would be . . . (7) to another agency or to an instrumentality of any governmental jurisdictional within or under the control the United States for a civil or criminal law enforcement activity if the activity is authorized by law, and if the head of the agency or instrumentality has made a written request to the agency which maintains the record specifying the particular portion desired and the law enforcement activity for which the record is sought."

CASE No. 20-cv-03150-MMC:  OPPOSITION OF PLAINTIFF TO MOTION OF DEFENDANT TO DISMISS COMPLAINT PURSUANT TO RULE 12(b)(6)

State of California - Department of Business Oversight

E.  **The Complaint**

On April 1, 2020, DBO filed a lawsuit against PHEAA containing two causes of action in Superior Court for the County of San Francisco relating to the examination and a list of questions sought out in connection with that examination.

The first cause of action is for a preliminary and permanent injunction to compel PHEAA to file reports relating to the TEACH Grant reconsideration program as required under Financial Code § 28130, subdivisions (b), (c) and (d), which DBO requested pursuant to its authority under Financial Code § 28108.

The second cause of action is for a declaratory judgment pursuant to Civil Code § 1060, for the Court to declare the legal rights and duties of the parties herein under the CSLSA and specifically with rights and duties as it relates to data about the TEACH Grant reconsideration program.  The complaint seeks a declaration: (1) that defendants must comply at all times with all provisions of the CSLSA, which includes but is not limited to, the power to conduct investigations and examinations of documents, books and records relating thereto, require reporting of all student loan servicing activity in the state of California, including federal loans and (2) pay an annual pro-rata assessment of the proportion of defendants' servicing activities in California as levied by the Commissioner.

On May 8, 2020 PHEAA removed this matter to Federal District Court.  See Doc. 1.

III.  **OBJECTION TO INTRODUCING PHEAA's CONTRACT IN SUPPORT OF PHEAA's MOTION TO DISMISS**

PHEAA submitted redacted excerpts of the PHEAA's contract[4] with the Department (contract) as Exhibit A to the Declaration of Thomas F. Burke in Support of Defendant PHEAA's Motion To Dismiss.  The Court should not rely on those excerpts, which are beyond the scope of the complaint and not properly subject to judicial notice, at this stage of the proceedings.

Generally, unless the court converts the Rule 12(b)(6) motion into a motion for summary judgment, it cannot consider materials outside the complaint.  Although a court can augment the

---

[4]  DBO does not have nor is it aware of any other entity that has a complete copy of the contract.

1   facts with "data points gleaned from documents incorporated by reference into the complaint,

2   matters of public record, and facts susceptible to judicial notice," *Haley v. City of Boston* 657 F.3d

3   1031, 1038 (1st Cir. 2011), the contract is not attached to the complaint, no portion of the contract is

4   incorporated into the complaint, and the contract's terms are plainly not a matter of public record,

5   *see supra* at n.4.  Neither the complaint's passing references to PHEAA's status as a contractor with

6   the Department nor the reference to a "loan servicing agreement" in PHEAA's email attached as

7   Exhibit B to the complaint (Doc.1) are sufficient to incorporate the contract's specific terms into the

8   complaint.  *See Coto Settlement v. Eisenberg* 593 F.3d 1031, 1038 (9th Cir. 2010)  (holding that

9   "mere mention is insufficient to incorporate the contents of a document"); *see also* O'Connell &

10  Stevenson, RUTTER GROUP PRAC. GUIDE: FEDERAL CIV. PRO. BEFORE TRIAL (The Rutter

11  Group 2019) 9:212.1a.  Indeed, the contract's terms are not central to DBO's claims, which center

12  on DBO's inherent police powers over consumer protection.

13          PHEEA's inclusion only of redacted excerpts from the contract underscores the problem with

14  PHEEA's attempted reliance on this extrinsic evidence in several ways. First, DBO is uncertain as to

15  the authenticity of the contract because PHEEA has not disclosed the contract in its entirety. See,

16  O'Connell & Stevenson, RUTTER GROUP PRAC. GUIDE: FEDERAL CIV. PRO. BEFORE

17  TRIAL (The Rutter Group 2019) 9:212.1a.  Second, DBO is uncertain whether PHEEA may be

18  withholding additional contract terms that allow compliance with DBO's requests and may even

19  require PHEEA to comply with state law or court order relating to release of the requested

20  information.  Civil discovery ensures that parties are on equal footing as to the facts in order to fully

21  argue the legal merits.  Reliance on potentially disputed factual material beyond the scope of DBO's

22  complaint at the motion to dismiss stage would unduly prejudice DBO's interests, particularly when

23  they are selective excerpts of a contract in the exclusive possession of PHEEA.

24  **IV.   LEGAL STANDARD**

25          Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion

26  to dismiss, the complaint "must contain sufficient factual matter, accepted as true, to state a claim to

27  relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 [internal cites omitted]

28  (2009).  See also, *Student Loan Servicing Alliance (SLSA) v. Taylor,* 351 F.Supp.3d 26, 43 (2018)

1    Further, in deciding a motion to dismiss, the court must accept as true all the factual allegations

2    contained in the complaint and construe them in the light most favorable to the plaintiff.

3    *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 508 n.1 [internal cites omitted]  (2002); *Lazy Y Ranch*

4    *Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).

5    **V.      ARGUMENT**

6            The CSLSA requires DBO to license student loan servicers in California and conduct

7    oversight of licensees. This is similar to DBO's responsibility to license and conduct oversight of

8    other financial entities, a traditional exercise of the state's police powers. Accepting as true the

9    allegations in the complaint, neither the CSLSA generally nor DBO's notice of inspection to

10   PHEAA create an obstacle to the operation of the federal loan programs authorized under the HEA,

11   make it impossible for PHEAA to comply with its obligations under federal law, or directly regulate

12   the federal government. Accordingly, PHEAA's motion to dismiss should be denied.

13           **A.      The CSLSA is not preempted by the HEA.**

14           The Supremacy Clause vests in Congress the power to preempt state laws.  *Arizona v. United*

15   *States*, 567 U.S. 387, 399 (2012).  "Federal preemption occurs when: (1) Congress enacts a statute

16   that explicitly pre-empts state law; (2) state law actually conflicts with federal law; or (3) federal law

17   occupies a legislative field to such an extent that it is reasonable to conclude that Congress left no

18   room for state regulation in that field." *CTIA - The Wireless Ass'n v. City of Berkeley*, Cal., 928 F.3d

19   832, 849 (9th Cir. 2019). The second category is often referred to as conflict preemption, and

20   PHEAA invokes two variants of it: obstacle and impossibility preemption.[5]

21           Any preemption inquiry is "guided by two cornerstones." *Wyeth v. Levine*, 555 U.S. 555, 565

22   (2009). First, Congressional purpose is the "ultimate touchstone in every preemption case." *Id*.

23   "Congress' intent, of course, primarily is discerned from the language of the pre-emption statute and

24   the 'statutory framework' surrounding it." *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 486 (1996)

25   (quoting *Gade v. National Solid Wastes Management Ass'n*, 505 U.S. 88, 111, 112 (1992) (Kennedy,

26

27   _____

28   [5]  PHEAA does not argue Congress explicitly pre-empted state law, nor does it assert field preemption here. In any
     event, the Ninth Circuit has "previously held that field preemption does not apply to the HEA."  *Chae v. SLM*
     *Corporation*, 593 F.3d 936, 941-42 (9th Cir. 2010).

J., concurring in part and concurring in judgment)). Second, there is an assumption that the historic police powers of the state have not been superseded unless that was the "clear and manifest purpose of Congress." *Wyeth*, 555 U.S. at 565; *see also Knox v. Brnovich*, 907 F.3d 1167, 1173-74 (9th Cir. 2018).

### 1. **The Presumption Against Preemption Applies to the CSLSA**

Consumer protection is an area that traditionally has been regulated by the states. *See California v. ARC Am. Corp.*, 490 U.S. 93, 101 (1989); *see also <u>Chae v. SLM Corp.</u>*, 593 F.3d 936, 944 (9th Cir. 2010). Consumer protection is baked into the CSLSA. See Notes to Finance Code § 28100(f) ("It is the intent of the Legislature to promote all of the following: (1) Meaningful access to federal affordable repayment and loan forgiveness benefit. (2) Reliable information about student loans and loan repayment options. (3) Quality customer service and fair treatment."). These purposes are the hallmarks of consumer protection. Accordingly, the presumption against preemption and requirement that Congress express a clear and manifest purpose to displace state law apply here.

### 2. **Congress did not clearly and manifestly express an intent to preempt the CSLSA**

Conflict preemption arises 1) when the state regulations stand as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress (obstacle) or 2) when compliance with both the federal and state regulations is a physical impossibility (impossibility). *Hillsborough County v. Automated Med. Labs., Inc.*, 471 U.S. 707, 713 (1985). "Mere possibility of inconvenience is not a sufficient obstacle – the repugnance must be so direct and positive that the two acts cannot be reconciled or consistently stand together." *United States v. California*, 314 F.Supp.3d 1077 (E.D. Cal. 2018). Furthermore, unlike in express or field preemption where the laws are considered it their entirety, conflict preemption requires a court to undertake a more detailed analysis to identify *actual* conflicts between the federal and state law. *SLSA v. Taylor*, 351 F.Supp.3d 26, 61. Finally, the conflict preemption analysis "does not justify a freewheeling judicial inquiry into whether a state statute is in tension with federal objectives; such an endeavor would undercut the principle that it is Congress rather than the courts that preempts state law." *Chamber of Commerce of U.S. v. Whiting*, 563 U.S. 582, 607 (2011) (plurality opinion) (internal quotation

1    omitted); accord *United States v. California*, 921 F.3d at 879. "[E]vidence of pre-emptive purpose,

2    whether express or implied, must therefore be sought in the text and structure of the statute at issue."

3    *Virginia Uranium, Inc. v. Warren*, 139 S. Ct. 1894, 1907 (2019).

4            Here, PHEAA invokes both types of conflict preemption. Under Ninth Circuit precedent,

5    however, neither applies.

6                         a.  **Obstacle preemption does not apply.**

7            Obstacle preemption exists where state regulations stand as an obstacle to the

8    accomplishment and execution of the full purposes and objective of Congress. *Hillsborough*

9    *County*, 471 at 713.  PHEAA's arguments that CSLSA is an obstacle to the HEA overlooks

10   applicable Ninth Circuit authority and glosses other material factual differences between this case

11   and the cases upon which PHEAA relies.

12           As initial matter, PHEAA argues that the CSLSA (which has similar standards in its

13   licensing analysis as in the HEA) is an obstacle to HEA, asserting that the state law allows "the DBO

14   to usurp the selection of federal contractors delegated to the Department by Congress."  Def. MPA

15   pg. 15:23-24.  To the extent PHEAA maintains CSLSA is an obstacle to the HEA simply because it

16   is a parallel state regulatory scheme, this argument fails. To be sure, under *field* preemption, state

17   laws that parallel federal laws are impermissible since field preemption reflects a congressional

18   decision to foreclose any state regulation in the area.  *See Arizona v. United States*, 567 U.S.  401.

19   But that is not the law for conflict preemption. Instead, conflict preemption applies to a parallel state

20   law only if it is an obstacle to the purpose of federal law or makes it impossible to comply with

21   federal law.  Indeed, in other legal fields, such as civil rights and criminal law, to list a few, both

22   federal and state laws coexist and state oversight is not preempted.  In the field of securities

23   regulations (e.g. shares in a business), federal and state statutes govern the offers and sales of

24   securities simultaneously.  Securities are regulated under federal law, the Securities Act of 1933, 15

25   U.S.C. §§ 77a et seq., and under California law, Corporate Securities Law of 1968, Corporations

26   Code §§ 25000 et seq.  Nothing in CSLSA itself purports to limit the ability of companies like

27   PHEAA to contract with the federal government under the HEA or to allow DBO to substitute its

28

State of California - Department of Business Oversight

-12-

CASE No. 20-cv-03150-MMC:  OPPOSITION OF PLAINTIFF TO MOTION OF DEFENDANT
TO DISMISS COMPLAINT PURSUANT TO RULE 12(b)(6)

1  judgment for the Department's contracting decisions under the HEA in a way that facially create an

2  obstacle to achieving the federal purpose.

3    PHEAA points to *Leslie Miller* and its progeny for the proposition that any state licensing

4  law is preempted with respect to federal contracts. The Ninth Circuit, however, has not endorsed the

5  expansive reading of the *Leslie Miller* line of cases that PHEAA advances, and the factual

6  circumstances of the present action align, not with *Leslie Miller* and its progeny, but with cases

7  where the Ninth Circuit held obstacle preemption did not apply. This is particularly true at the

8  pleadings stage, where PHEAA has presented no evidence of how compliance with DBO's

9  information request will *actually* undermine its ability to fulfill its duties as a loan servicer.

10    In *Leslie Miller Inc. v. Arkansas*, 352 U.S. 188-90, the federal government contracted with a

11  construction contractor to build facilities at an Air Force base in Arkansas.  The contractor did not

12  have a state issued construction contractors license.  The state law prohibited even the act of bidding

13  on a project without a state issued license.  The state contracting authority filed an information

14  against the contractor, and a fine imposed after a finding of guilt was upheld in state court.

15  However, the U.S. Supreme Court in reversing the state court's ruling affirming the penalty, held

16  that subjecting a federal contractor to the state licensing board "would give the state a virtual power

17  of review over the federal determination of responsibility and would thus frustrate the expressed

18  federal policy of selecting the lowest responsible bidder." *Id*. at 190.

19    In *Gartrell Constr. Inc. v. Aubry*, 940 F2d 437, 439 (9th Cir. 1991), the Ninth Circuit applied

20  *Leslie Miller* to a federal contract for construction at the Marine Corp. Air Station El Toro in

21  California, where the selected contractor was not licensed by the state.  The state law did not prohibit

22  bidding on projects but rather required licensure once the contract was awarded. The state fined the

23  contractor $57,600 because the contractor failed to obtain a state issued contractor's license. *Id* at

24  437.  The Ninth Circuit found the Federal and California standards similar and affirmed the holding

25  of *Leslie Miller* stating, "[t]he similarity of factors makes clear that California, through its licensing

26  requirements, is effectively attempting to review the federal government's responsibility

27  determination.  That review is prohibited by *Leslie Miller.*"

28

State of California - Department of Business Oversight

1    The other cases cited by defendant similarly involve cases where the state took action or

2   threatened to penalize a federal contractor for failure to obtain a state license or its equivalent.  In

3   *Sperry v. State of Fla. ex rel. Florida Bar,* 373 U.S. 379, 385 (1963) the state took action against an

4   individual, who was not a member of the state bar, to prevent that person from practicing before the

5   U.S. Patent Office.  That individual had been practicing before the U.S. Patent Office for many years

6   before the state action.  In *United States v. Virginia*, 139 F.3d 984 (4th Cir. 1988), the state

7   threatened to bring action against private security services – all former federal investigators - who

8   had contracts with the F.B.I. to conduct federal background checks, to enjoin them from acting as

9   investigators in the state and to penalize them for not having the appropriate state license.  Some of

10   the private security services reported that they would not perform the work for the F.B.I. rather than

11   submit to the state private security licensing regime.  This resulted in the specter of the F.B.I. losing

12   manpower, which impeding the F.B.I.'s ability to perform background checks in the state and

13   potentially negatively affected national security.  In *United States v. Town of Windsor, Conn.,* 765

14   F.2d 16 (2nd Cir. 1985), the building inspector for the Town of Windsor issued a stop work order

15   against a federal construction contractor during the construction of two buildings at The Knolls

16   Atomic Power Laboratory because the contractor had not obtain the necessary building permits from

17   the building department.

18    As the Ninth Circuit has recognized, for obstacle preemption to apply (as a form of conflict

19   preemption), the conflict must be an actual conflict, not merely a hypothetical or potential conflict."

20   *Chicanos Por La Causa, Inc. v. Napolitano*, 558 F.3d 856, 863 (9th Cir. 2009), *aff'd sub nom.*

21   *Chamber of Commerce of U.S. v. Whiting*, 563 U.S. 582 (2011); *accord English v. Gen. Elec. Co.*,

22   496 U.S. 72, 90 (1990) ("The Court has observed repeatedly that pre-emption is ordinarily not to be

23   implied absent an 'actual conflict.'" (citing *Savage v. Jones*, 225 U.S. 501, 533 (1912)); *Chamberlan*

24   *v. Ford Motor Co.*, 314 F. Supp. 2d 953, 957 (N.D. Cal. 2014) ("Speculative or hypothetical conflict

25   is not sufficient: only State law that 'actually conflicts' with federal law is preempted.").  All cases

26   cited by PHEAA involve actions or actual imminent threat, either by fine or stop order by the state,

27   that impeded the actual functioning of the federal government or its contractor in the furtherance of

28   that contract.  That is, there was actual harm to the contractor or impeded governmental functions in

-14-

1    those cases.  That is not the case here: DBO has not moved to revoke PHEAA's license or issued a

2    fine.  DBO has instead simply requested records and information and initiated legal proceedings to

3    obtain records, consistent with federal law and PHEAA's contract. There is no actual conflict here.

4    DBO has not interfered with any contract rights between PHEAA and the Department.  That is,

5    without anything else, PHEAA can carry out its purpose under the contract and service student loan

6    borrowers in California with or without regard to CSLSA.

7           To the extent PHEAA maintains the state licensing requirements generally, or DBO's

8    specific request for information, are a burden that interfere with its contract, the Ninth Circuit has

9    rejected this argument in analogous circumstances.  *United Sates v. California*, 921 F.3d 865, 885-86

10   (9th Cir. 2019), involved a challenge by the federal government to state law that required federal

11   contractors operating immigration detention facilities to submit to inspections and provide

12   documentation to the California Attorney General.   In declining to apply obstacle preemption, the

13   Ninth Circuit examined *Leslie Miller* and its progeny and explained:

14              These cases evinced states' active frustration of the federal government's ability to
                discharge its operations . . . The law might require some federal action to permit
15              inspections and produce data . . . but as California persuasively notes, "[M]ere
                collection of such factual data does not (and cannot) disturb any federal arrest or
16              detention decision."

17   *United Sates v. California*, 921 F.3d at 885.  As there was for the California Attorney General's

18   activities with respect to immigration detention facilities, neither CSLSA nor DBO's request for

19   information actively frustrate federal operations or impede PHEAA's ability to serve as a loan

20   servicer.

21          PHEAA appears to suggest that it is burdened simply because it must obtain licensure under

22   CSLSA and submit to examinations as to its federal loan portfolio.  As to the first argument,

23   PHEAA must obtain a student loan servicer license in California anyway since it also services non-

24   federal loans.  Because it is otherwise subject to the licensing requirement, that requirement cannot

25   credibly be viewed as an obstacle to its performance under the federal contract.  As to the second,

26   the Ninth Circuit rejected a nearly identical argument in *United States v. California*, 921 F.3d at 885,

27   that complying with state inspection and document requests are enough to trigger obstacle

28   preemption.

State of California - Department of Business Oversight

1    PHEAA also points to two recent district court decisions addressing state regulation of

2  student loan servicing, the *SLSA* decision and the *Perez* case, for the proposition that the mere threat

3  of second guessing the federal government's contracting decisions is sufficient under *Leslie Miller* to

4  invalidate a state licensing schemes as applied to servicers when servicing federal loans.  See *SLSA v*

5  *Taylor,* 361 F.Supp.3d at 63.; *PHEAA  v. Perez*, 3:18-cv-114 (MPS) at *9, 2020 WL 2079634 (D.

6  Conn. April 30, 2020).  First, these decisions did not cite or follow the Ninth Circuit authority

7  discussed above, so their persuasive value is limited here. Second, these decisions rest on the mere

8  potential for conflict, rather than actual conflict. The pronouncements in *SLSA* and *Perez* about

9  potentials for conflicts is forward looking for a day that may never come.  Nothing in *Leslie Miller*

10  counsels the displacement of state law by speculative conflicts with federal law.[6]   Finally, extending

11  *Leslie Miller* this far does ignores the requirement for an actual conflict before a state law is

12  preempted. It also does not recognize the principle that "in the interest of avoiding unintended

13  encroachment on the authority of the States … a court interpreting a federal statute pertaining to a

14  subject traditionally governed by state law will be reluctant to find pre-emption."  *Sickle v. Torres*

15  *Advanced Enter. Sols, LLC*, 884 F.3d 338, 346 (D.C. Cir. 2018).  Therefore, viewed through the lens

16  of presumption against preemption, PHEAA has not shown that it was Congress' "clear and

17  manifest" intent to block application of the CSLSA to federal loans, particularly where the State has

18  not taken action to fine or otherwise interfere with PHEAA's performance under its federal contract.

19  *Medtronic Inc. v. Lohr*, 518 U.S. 470, 485 (1996).[7]

20    Indeed, PHEAA has not articulated how, in the specific context of the TEACH Grant

21  reconsideration program, DBO's request for information creates an obstacle to fulfilling PHEEA's

22

23  _____

24  [6]  Even if DBO denied or revoked PHEAA's state license, PHEAA would still have its federal
contract.  Denial or revocation of a license does not cancel or frustrate the contract.  Only if DBO
25  moves to fine or penalize PHEAA for operating under the federal contract might a conflict
potentially arise. Such a scenario is not before this Court. DBO does not, however, concede that such
26  an enforcement action would in fact hinder the full purposes of the HEA.
27  [7]  Although PHEAA points to the DBO April 10, 2020 letter as evidence of an action, this letter
merely points out PHEAA's obligations under the state statutory scheme and is not analogous to
28  interfering with PHEAA's federal contract.

CASE No. 20-cv-03150-MMC:  OPPOSITION OF PLAINTIFF TO MOTION OF DEFENDANT
TO DISMISS COMPLAINT PURSUANT TO RULE 12(b)(6)

State of California - Department of Business Oversight

1    duties, which are to review requests to modify loans that were improperly converted back to grants.

2    Indeed, it is difficult to imagine how requesting data and documents for the reconsideration program

3    could interfere with the purposes of the TEACH Grant program, which are found at 20 U.S.C.

4    §1070(a)(4) ("providing for special programs and projects designed (A) to identify and encourage

5    qualified youths with financial or cultural need with a potential for postsecondary education, (B) to

6    prepare students from low-income families for postsecondary education, and (C) to provide remedial

7    (including remedial language study) and other services to students").

8            Finally, under California's inherent police powers over student loan servicers, DBO's request

9    to PHEAA for data and documents is not an obstacle to the purposes of the reconsideration program.

10   In other words, DBO's requests relating to the TEACH Grant reconsideration program is not a

11   "second guessing" of the Department and does not frustrate the reconsideration program's goals –

12   which is to provide a path for student loan borrowers to have their erroneously converted grants that

13   are now loans, reconverted from loans back into grants.  Unlike the state entities in the *Leslie Miller*

14   line of cases, DBO has not penalized a Federal contactor (in this case PHEAA) for non-compliance

15   or moved to invalidate its license or otherwise supplant its judgment for that of the Department.  All

16   DBO is seeking is information about a program intended to remedy prior malfeasance.  PHEAA has

17   cited nothing in the "the text and structure of the statute at issue" that manifests a clear intent to

18   preempt the exercise of the state's historic police power to request such information from a business

19   entities operating within state boundaries. *Warren*, 139 S. Ct. at 1907.

20                          **b.   Impossibility preemption does not apply.**

21           PHEAA's invocation of impossibility preemption underscores that this matter is essentially a

22   discovery dispute seeking judicial resolution that is premature on a motion to dismiss.  DBO asked

23   questions and requested documents under a state law that expressly authorized such requests, and

24   that authorizes DBO to pursue a court order to obtain the requested information and records if

25   necessary.  PHEAA asserted that it could not provide the information because the Department

26   instructed PHEAA to withhold the requested data.  PHEAA now invokes the Department's

27   interpretation of the Privacy Act and PHEAA's contract with the Department to support its position

28   that it cannot release the information.  Both of these reasons fail upon a closer examination.

-17-

The Privacy Act,  5 U.S.C. § 552a(4), covers "a group of any records under the control of any agency from which information is retrieved by the name of the individual or by some identifying number, symbol, or other identifying particular assigned to the individual." The Privacy Act prohibits disclosure of personally identifying information (or PII) unless certain conditions exist. Through this action, DBO is seeks an order expressly contemplated under 5 U.S.C. § 552a(b)(11), a provision of the Privacy Act that allows disclosure of personal information without written consent of the individual to whom the record pertains "pursuant to the order of a court of competent jurisdiction."  Indeed, if successful, this action will result in an order to produce the relevant information, similar to a motion to compel production in response to a subpoena, and thus meeting the conditions for disclosure under the exemption.

Simply put, the Privacy Act does not make it impossible to comply with DBO's examination requests.  The Privacy Act does not create a discovery privilege that would shield this information. See *Laxalt v. McClatchy,* 809 F.2nd 885, 888-89 (D.C. Cir. 1987).  In the student loan servicing context, no less than five cases in the last two years have held that a servicer cannot withhold documents based on Privacy Act concerns and each court ordered the discovery.  *Consumer Finance Protection Bureau v. Navient* 3:17cv101, 2018 WL 3824367 (M.D. Pa. 2018) (holding that the Privacy Act does not create a discovery privilege.) Yee Decl. Ex 7.  (See also *State of Washington v. Navient,* 17-2-01115-1 SEA, 2018; *Commonwealth of Pennsylvania v. Navient*, 3:17cv1814, 2018; *The People of the State of California v. Navient*, CGC-18-567732, 2019; *District of Columbia v. Navient*, 2019 CA 5086.)  Yee Decl. Ex. 8-11.

PHEAA has pointed to the Department's December 27, 2017 memo[8] as a reason they cannot respond to the request for information.  An agency administrator, however, is not empowered to

---

[8]  The Department's recent position on such compliance is contrary to its directives just 16 months earlier, when on July 20, 2016, the Department released a memorandum entitled "Policy Direction on Federal Loan Servicing" (the so-called "Mitchell Memo") which directed that "[s]ervicing contractors should comply with federal and state law, taking any necessary steps to support oversight by federal and state agencies, regulators, or law enforcement officials."  Yee Decl.  Ex. 12, Mitchell Memo.  This cooperation was echoed in October of 2017, where the CFPB stated in its annual report that "[c]onsumers benefit when the student loan industry is subject to coordinated oversight by regulators at both the federal and state levels."  Yee Decl. Ex.13 , CFPB 2017 report.

CASE No. 20-cv-03150-MMC:  OPPOSITION OF PLAINTIFF TO MOTION OF DEFENDANT TO DISMISS COMPLAINT PURSUANT TO RULE 12(b)(6)

speak for Congress by overriding an express exemption under the Privacy Act, thereby manufacturing a conflict with state law.  It is circular, to say the least, to assert that a federal law makes it impossible to comply with a state law authorizing a state agency to obtain an order compelling production, when the federal law explicitly authorizes disclosure in response to such an order.  The district court in *SLSA* recognized this in finding the Department's Preemption Notice, 83 Fed.Reg. 10619-20, was a "retroactive, ex post rationalization for the [Department's] policy change" that represented "a stark unexplained change in the [Department's] position."  *SLSA,* 351 F.Supp.3d 26, 50.  In any event, the Memo does not deserve any deference as it relates to PHEAA's impossibility defense here.  In fact, the Memo is irrelevant since it does not address the exemption to the Privacy Act at issue here. Specifically, the Memo refers, as its basis, to the System of Records Notices (SORN) 81 Fed.Reg. 60686 (September 2, 2016) that prescribes the "routine use" disclosure under 5 U.S.C. § 552a(b)(3), and thus does not interpret 5 U.S.C. § 552a(b)(11), which the DBO's request is based on "pursuant to the order of a court of competent jurisdiction."

As discussed *supra* in Section III, the redacted excerpts of PHEAA's contract are extrinsic evidence not properly subject to judicial notice and are therefore not properly before this Court on a motion to dismiss. Nonetheless, even if considered, the excerpts do not support PHEAA's claim of impossibility. Most significantly, one excerpted portion of the contract requires PHEAA to comply with state law. (See MTD, Burke Decl. Ex. A "FSA 24-1  Release of Information Under The Freedom Of Information Act (Jan 2008), Document 11, pg. 12-13.)  PHEAA therefore cannot hide behind its contract as a basis for refusing to comply with CSLSA, a state law which requires production of the information.  Moreover, PHEAA has taken no steps to comply with *any part* of the request.  PHEAA could have sought out authorization for release of the PII for the TEACH Grant recipients (or at least the ones who have had the grants converted to loans), provided documents redacting PII or supplied the data and documents that clearly do not implicate PII.  DBO's request included, "policies and procedures, assessments of the effectiveness of the reconsideration process, data related to teach grants serviced, data relating to the number of California grants converted to

loans, number of California loans reconverted to grant." (Yee Decl. Ex. 1.) The responses to these categories of information do not ask for PII, which is the subject of the Privacy Act.

PHEAA can comply with the CSLSA and DBO's examination request without violating the Privacy Act (and, to the extent considered, its contract, which appears to specifically require compliance with the Privacy Act and state laws). Moreover, it can hardly be said that congressional intent to supplant CSLSA is "clear and manifest" when: (1) the Privacy Act itself contemplates disclosure of PII in response the court order that DBO seeks here, and (2) the HEA does not expressly restrict disclosure of the records and information sought here.

**B.**   **The CSLSA does not violate intergovernmental immunity principles**

Under the Supremacy Clause, a state may not "regulate[] the United States directly or discriminate[] against the Federal Government or those with whom it deals." *North Dakota v. United States*, 495 U.S. 423, 435 (1990) (plurality opinion). Because the CSLSA is a law of general applicability that does not differentially target the federal government, its operations, or its contractors, PHEEA focuses only the "direct regulation" component of intergovernmental immunity. MTD at 21-22.

While the Supreme Court, at one time, invalidated a state regulation that made "it more costly for the Government to do its business," the Court has since recognized that this "view has been thoroughly repudiated." *Id.* at 434. Instead, the Court's "modern-day treatment of the intergovernmental immunity doctrine has been marked by restraint[.]" *In re Nat'l Security Agency Telecomms. Records Litig.*, 633 F. Supp. 2d 892, 903 (N.D. Cal. 2007). The Court has taken "a functional approach to claims of intergovernmental immunity, accommodating of the full range of each sovereign's legislative authority and respectful of the primary role of Congress in resolving conflicts between the National and State Governments." *North Dakota*, 495 U.S. at 435.[9]

---

[9]  For this reason, the notable majority of modern cases have involved claims alleging impermissible targeting of and discrimination against the federal government or its contractors. *See, e.g.*, *United States v. California*, 921 F.3d 865, 882-85 (9th Cir. 2019) (petition for cert. filed) (state law alleged to impose more burdensome inspection requirements on facilities housing immigration detainees than facilities housing state prisoners); *Boeing Co. v. Movassaghi*, 768 F.3d 832, 839-43

1    In arguing that the CSLSA violates intergovernmental immunity by directly regulating the

2  federal government, PHEAA relies primarily on *Boeing Co. v. Movassaghi*, 768 F.3d 832, 836 (9th

3  Cir. 2014). That case, however, illustrates why the CSLSA is not a direct regulation of the federal

4  government.  In *Boeing,* a private contractor was hired by the federal government to clean up the

5  Santa Susana Field Laboratory, private parcel of land located in California, on which the U.S.

6  Department of Energy had conducted nuclear research and rocket testing.  *Id.* at 834-35.  The Ninth

7  Circuit invalidated California's site-specific environmental clean-up statute, which prescribed

8  standards for the Santa Susana Field Laboratory parcel that were more onerous than federal

9  standards and defined the Department of Energy as a responsible party for the site.  Accordingly, the

10  statute purported to directly regulate the federal government by imposing conditions on a federal

11  agency, as the responsible party, for cleanup of federal property.  Here, in contrast, the CSLSA does

12  not name the federal government, and instead applies only to private persons. Nor does the CSLSA

13  purport to direct the work a federal contractor is performing on behalf of the federal government, as

14  the statute in *Boeing* did by imposing more stringent cleanup standards than federal law, *see Boeing,*

15  at 840. In fact, neither the CSLSA itself nor DBO's inspection request interfere with PHEAA's

16  ability to discharge it contractual obligations consistent with the terms set out by the federal

17  government.

18    While the CSLSA may tangentially affect the federal government and the servicing of federal

19  loans because its contractors must operate consistently with state law, such an incidental impact is

20  not a direct regulation of the federal government. Intergovernmental immunity does not insulate the

21  federal government or those it seeks to do business with from any impact whatsoever from a state

22  regulation of neutral applicability. *See North Dakota*, 495 U.S. at 435 (plurality) ("Whatever burdens

23  are imposed on the Federal Government by a neutral state law regulating its suppliers are but the

24  normal incidents of the organization within the same territory of two governments."). This is true

25

26

27  (9th Cir. 2014) (state law imposing stricter cleanup standards on a single federal facility than on
similar state facilities); *United States v. City of Arcata*, 629 F.3d 986, 991-92 (9th Cir. 2010) (local

28  ordinance restricting speech of federal employees, and no one else).

CASE No. 20-cv-03150-MMC:  OPPOSITION OF PLAINTIFF TO MOTION OF DEFENDANT
TO DISMISS COMPLAINT PURSUANT TO RULE 12(b)(6)

1   because otherwise too many state laws would be supplanted based on "a judicially crafted doctrine

2   implied in the Constitution." See, Rubenstein, Supremacy Inc., 67 UCLA L.Rev. 4 (2020) pg. 73-74.

3   **VI.**   **CONCLUSION**

4          PHEAA's motion should be denied as it should not be allowed to challenge the application of

5   CSLSA by way of motion to dismiss, after all this is not a motion for summary judgement.

6

7   Dated: June 3, 2020                    MANUEL P. ALVAREZ
                                            Commissioner of Business Oversight
8

9                                           /s/  *Paul Yee*_____
                                            PAUL YEE
10

State of California - Department of Business Oversight

CASE No. 20-cv-03150-MMC:  OPPOSITION OF PLAINTIFF TO MOTION OF DEFENDANT
TO DISMISS COMPLAINT PURSUANT TO RULE 12(b)(6)

# CERTIFICATE OF SERVICE

Case Name:   ***People of the State of California***   No.   **3:20-cv-03150-MMC**
***v.***
***Pennsylvania Higher Education***
***Assistance Agency***

I hereby certify that on June 3, 2020, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**OPPOSITION OF PLAINTIFF TO MOTION OF DEFENDANT TO DISMISS COMPLAINT PURSUANT TO RULE 12(b)(6)**

**DECLARATION OF PAUL YEE IN OPPOSITION OF PLAINTIFF MOTION OF DEFENDANT TO DISMISS**

**[PROPOSED ORDER DENYING MOTION OF DEFENDANT TO DISMISS COMPLAINT PURSUANT TO RULE 12(b) (6)**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on June 3, 2020, at San Francisco, California.

Jennifer Perez                                    */s/ Jennifer Perez*
Declarant                                          Signature