IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PEOPLE OF THE STATE OF CALIFORNIA, by and through the Commissioner of Business Oversight,<br><br>Plaintiff,<br><br>v.<br><br>PENNSYLVANIA HIGHER EDUCATION ASSISTANCE AGENCY, d/b/a FedLoan,<br><br>Defendant. | Case No. 20-cv-03150-MMC<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS; DISMISSING COMPLAINT WITH LEAVE TO AMEND; CONTINUING CASE MANAGEMENT CONFERENCE** |

Before the Court is defendant Pennsylvania Higher Education Assistance Agency, d/b/a FedLoan's ("PHEAA") Motion, filed May 15, 2020, and amended May 20, 2020, "to Dismiss Complaint Pursuant to Rule 12(b)(6)." Plaintiff People of the State of California, by and through the Commissioner of Business Oversight ("DBO"),[1] has filed opposition, to which PHEAA has replied. Having read and considered the papers filed in support of and in opposition to the motion, the Court rules as follows.[2]

**BACKGROUND**

For purposes of the instant motion, the Court assumes true the following allegations made in the complaint.

Under the California Student Loan Servicing Act ("CSLSA"), "all student loan servicers servicing student loans in California [must] become licensed with the DBO." (See Compl. ¶ 2.) PHEAA, "a national student loan servicer," became licensed with the

---

[1] Both parties refer to the plaintiff as the "DBO," i.e., the Department of Business Oversight, a California state agency.

[2] By order filed June 22, 2020, the Court took the matter under submission.

[DBO] on November 5, 2018.  (See Compl. ¶¶ 7, 35.)

PHEAA services "private" student loans and "federal" student loans.  (See Compl. ¶ 8.)  With respect to the latter type of loans, the United States Department of Education ("Department of Education"), in 2009, "awarded [PHEAA] a federal loan servicing contract . . . to service federally owned loans nationally."  (See Compl. ¶ 20.)  More recently, in 2012, the Department of Education awarded PHEAA "the exclusive contract to service and administer the Teacher Education Assistance for College and Higher Education ("TEACH") Grant program."  (See Compl. ¶ 4.)

The TEACH Grant program provides grants to students "who pursue teaching careers in low-income schools in high-needs fields such as mathematics, science, foreign language, or special education."  (See id.)  If a student who receives a TEACH grant "fail[s] to meet the eligibility criteria," such as by not "teaching four years in a high-need subject in a low-income school," the grant is "converted" into a loan, which the student must "repay with interest charges calculated back to the date the TEACH grant was disbursed."  (See Compl. ¶¶ 4, 15.)  In 2018, the Department of Education, "acknowledge[ing]" that some "Grant-to-loan conversions" had been "erroneous," "announced a TEACH Grant reconsideration program" and "designated" PHEAA to "administer the reconsideration process."  (See Compl. ¶ 25.)

On December 12, 2019, and on two dates thereafter, the DBO requested PHEAA provide to the DBO "documents and information concerning PHEAA's handling of the TEACH program reconsideration process and the California borrowers affected by it."  (See Compl. ¶¶ 4, 38, 40.)  PHEAA "refused" to provide the documents (see Compl. ¶ 4), relying in part on its position that the DBO's "examination authority" under the CSLSA is preempted by federal law (see Compl. ¶ 39).[3]

---

[3] PHEAA had earlier taken the position that, to the extent it services federal student loans in California, the DBO lacks authority to license such activities.  (See Compl. ¶ 35 (alleging PHEAA, shortly after became licensed, submitted to DBO "forms to surrender four branch licenses for branches that exclusively service federal loans"; further alleging DBO "has not accepted the surrender").)

In light of the above allegations, the DBO asserts two Causes of Action. In the First Cause of Action, titled "Preliminary and Permanent Injunction," the DBO seeks a court order requiring PHEAA to provide it with the requested information. (See Compl. ¶ 47.) In the Second Cause of Action, titled "Declaratory Relief," the DBO, asserting there exists a "controversy" as to whether the CSLSA is "preempted by federal law," seeks a declaration determining "the legal rights and duties of the parties" under the CSLSA. (See Compl. ¶ 51.)

**DISCUSSION**

PHEAA argues that both of the DBO's claims are subject to dismissal.

**A. First Cause of Action**

By the First Cause of Action, the DBO seeks an injunction requiring PHEAA to submit to the DBO documents pertaining to the manner in which PHEAA is, on behalf of the Department of Education, administering the TEACH Grant reconsideration program. See Cal. Fin. Code § 28168(a) (providing DBO may bring action to "enforce compliance" with CSLSA).

Under the CSLSA, which provides that "[n]o person shall engage in the business of servicing a student loan in [California] without first obtaining a license," see Cal. Fin. Code § 28102, the DBO has the authority to "conduct investigations and examinations" of a licensee for purposes of determining whether the licensee "is complying with the provisions of [the CSLSA]," see Cal. Fin. Code § 28108(a)(1). In the course of its investigation or examination, the DBO also has the authority to access "documents, information, or evidence" the DBO "deems relevant to the inquiry or investigation regardless of the location, possession, control, or custody of those documents, information, or evidence," see Cal. Fin. Code § 28108(a)(1)(C).

PHEAA contends the First Cause of Action is preempted by federal law. Specifically, PHEAA argues, the CSLSA stands as an obstacle to federal law governing the circumstances under which the Department of Education enters into agreements with

3

government contractors such as PHEAA.  As set forth below, the Court agrees.[4]

Under the Supremacy Clause, a state law that "stand[s] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress" is "preempted."  See Felder v. Casey, 487 U.S. 131, 138 (1988) (internal quotation and citation omitted).  "The relative importance to the State of its own law is not material when there is a conflict with a valid federal law, for any state law, however clearly within a State's acknowledged power, which interferes with or is contrary to federal law, must yield."  Id. (internal quotation, alteration, and citation omitted).

In considering whether a state statute is preempted, courts "start with the assumption that the historic police powers of the States [are] not to be superseded by [a] Federal Act unless that was the clear and manifest purpose of Congress."  See Wyeth v. Levine, 555 U.S. 555, 565 (2009) (internal quotation and citation omitted).  As PHEAA points out, however, the Supreme Court and the Ninth Circuit have held the application of state licensing statutes to federal contractors is preempted, and, in doing so, have necessarily found a clear and manifest congressional intent not to grant states the authority to second-guess determinations a federal agency makes with respect to its selection of contractors.

In particular, in Leslie Miller, Inc. v. Arkansas, 352 U.S. 187 (1956), the Supreme Court held state licensing laws are preempted when applied to federal contractors, even where the factors the state considers in determining whether to grant a license are "similar" to those employed by the federal government in determining to whom a federal contract is awarded.  See id. at 188.  As the Supreme Court observed, "[s]ubjecting a federal contractor to the [state] license requirements would give the [s]tate's licensing board a virtual power of review over the federal determination."  See id. (finding Arkansas law requiring contractor to obtain construction license preempted when applied to

---

[4] In light of this finding, the Court does consider herein PHEAA's additional arguments in support of dismissal.

4

company awarded federal contract to construct military base in Arkansas).  Similarly, in Gartrell Construction Inc. v. Aubry, 940 F.2d 437 (9th Cir. 1991), the Ninth Circuit held a California licensing law was preempted when applied to a federal contractor.  See id. at 441 (finding, "[b]ecause the federal government made a direct determination of [the contractor's] responsibility, California may not exercise a power of review by requiring [the contractor] to obtain state licenses").

Here, as in Leslie Miller and Gartrell, federal law sets forth the requirements the federal agency, in this instance, the Department of Education, must follow when selecting a contractor.  Pursuant to the Higher Education Act ("HEA"), the Department of Education has the authority to "enter into contracts for . . . the servicing and collection of loans made by or purchased by [the Department of Education]."  See 20 U.S.C. § 1087f(b).  The HEA also sets forth the factors the Department of Education must consider when determining whether to enter into such a contract.  Specifically, it must "ensure" the services "are provided at competitive prices," see 20 U.S.C. § 1087f(a)(1), "determine[ ]" the contracting entity "is qualified to provide such services . . . and will comply with the procedures applicable to the award of such contract," see 20 U.S.C. § 1087f(a)(2), and "enter into contracts only with entities" having "extensive and relevant experience and demonstrated effectiveness," see id.  Additionally, the Department of Education must, under the Federal Acquisition Regulations, determine the contracting entity is "responsible," see 48 C.F.R. § 9.103(b), which determination, in turn, requires a number of findings, including a finding that the contractor has "adequate financial resources to perform the contract, or the ability to obtain them," see 48 C.F.R. § 9.104-1(a), and has "a satisfactory record of integrity and business ethics," see 48 C.F.R. § 9.104-1(d).

In an attempt to distinguish Leslie Miller and Gartrell, the DBO argues that the CSLSA's licensing requirements are not an obstacle to the above-referenced federal law, because, according to the DBO, the CSLSA does not "allow [the] DBO to substitute its judgment for the [Department of Education's] contracting decisions."  (See Pl.'s Opp. at 12:26-13:1.)  The text of the CSLSA, however, demonstrates otherwise.  In particular, the

1  CSLSA provides the DBO with discretion to determine whether to grant a license, see,
2  e.g., Cal. Fin. Code § 28120(b)(7) (providing DBO may deny license where it is "unable to
3  find" applicant's "business will be operated honestly, fairly, efficiently, and in accordance
4  with [CSLSA]"), as well as the discretion to suspend or revoke a license, see, e.g., Cal.
5  Fin. Code § 28166(d) (providing DBO may suspend or revoke license where it finds
6  "competence, experience, character, or general fitness of the licensee . . . indicates that it
7  is not in the public interest to permit the licensee to continue servicing student loans").

Next, the DBO, relying on United States v. California, 921 F.3d 865 (9th Cir. 2019), argues that requiring PHEAA to provide documents to the state does not conflict with federal law. The cited case, however, is distinguishable. There, the Ninth Circuit considered a California statute directing the state Attorney General to "conduct a review of county, local, or private locked detention facilities in which noncitizens are being housed or detained for purposes of civil immigration proceedings," see Cal. Gov't Code § 12532(b)(1), and thereafter to submit to the Legislature and Governor a report outlining his/her findings, see Cal. Gov't Code § 12532(b)(2). Additionally, under said statute, the Attorney General was entitled to "all necessary access for the observations necessary to effectuate reviews . . . , including, but not limited to, access to detainees, officials, personnel, and records," see Cal. Gov't Code § 12532(c), which provision, the United States argued, was an obstacle to federal enforcement of immigration laws and, as such, preempted.

Rejecting the United States's argument, the Ninth Circuit concluded the "mere collection of such factual data does not (and cannot) disturb any federal arrest or detention decision," see United States, 921 F.3d at 885,[5] and, distinguishing Leslie Miller and Gartrell, noted the statute at issue "did not mandate that [the federal] contractors obtain a state license," see id.

---

[5] The "factual data" referenced therein pertained to "general health and safety standards" at the facilities and the detainees' access to "legal reference materials and confidential communications with counsel." See id. at 884.

6

1    Here, by contrast, the CSLSA, the statute under which the DBO seeks to require
2 PHEAA to submit documents for its review of PHEAA's performance, is a licensing
3 statute.  As state licensing statutes cannot be applied to federal contractors, and the sole
4 basis on which the DBO seeks relief in the instant case is a licensing statute, it
5 necessarily follows that the DBO's claim seeking a court order requiring PHEAA to
6 produce documents is subject to dismissal.  See Leslie Miler, 352 U.S. at 189-90; see
7 also Pennsylvania Higher Education Assistance Agency v. Perez, 2020 WL 2079634, at
8 *8-9, 11 (D. Conn. April 30, 2020) (holding Connecticut statute requiring loan servicers to
9 obtain licenses preempted as applied to federal contractors; further holding provision
10 requiring loan servicers to submit documents to state licensing agency upon request
11 preempted as applied to federal contractors).

12   Lastly, noting it has not fined PHEAA or sought to suspend or revoke its license,
13 the DBO contends there is, at this time, no actual conflict between federal and state law,
14 thus suggesting any assertion of preemption is premature.  As the Ninth Circuit has
15 found, however, state "interference" with the federal government's selection of a
16 government contractor "occurs when . . . the state requires the contractor to comply with
17 its licensing laws."  See Gartrell, 940 F.2d at 439.  Here, it is readily apparent the DBO is
18 requiring PHEAA, in its capacity as a servicer of federal loans, to comply with the CSLSA,
19 not only by seeking a court order requiring compliance with the terms of licenses issued
20 thereunder, but also by its acknowledgement in its complaint that it will "not accept[ ]"
21 PHEAA's surrender of those licenses.  (See Compl. ¶ 35.)

22   Moreover, under the CSLSA, the DBO, based on PHEAA's alleged failure to
23 provide the requested documents, has the present right not only to suspend or revoke
24 PHEAA's license, see Cal. Fin. Code § 28166, but also to impose on PHEAA financial
25 penalties, see Cal. Fin. Code §§ 28154(a), 28170(a), 28172(a), as well as refer it to the
26 district attorney for criminal prosecution, see Cal. Fin. Code § 28174.  The Court finds
27 PHEAA need not await revocation/suspension of its license, imposition of a fine or,
28 indeed, criminal prosecution, in order to raise the issue of preemption.  See, e.g., Student

Loan Servicing Alliance v. District of California, 351 F. Supp. 3d 26, 45-46, 75 (D. D.C. 2018) (holding servicers of federal student loans entitled to challenge newly-enacted District of Columbia statute under which such servicers were required to obtain license, even though District "had not yet denied or revoked the license of a federal loan servicer," nor had any "disclosures . . . yet been ordered"; holding statute preempted as applied).

Accordingly, the Court finds the First Cause of Action is preempted and, consequently, said claim will be dismissed without leave to amend.

## B.  Second Cause of Action

In its Second Cause of Action, the DBO seeks a declaration that the CSLSA is not "preempted by federal law" and, consequently, that PHEAA must comply with the provisions of the CSLSA.  (See Compl. ¶ 52.)

As noted, the DBO, in its First Cause of Action, seeks an injunction requiring PHEAA to comply with the provisions of the CSLSA.  The Second Cause of Action is thus, in essence, duplicative of the First Cause of Action.  In any event, as set forth above, the Court, in finding the First Cause of Action subject to dismissal, has concluded the CSLSA is preempted when applied to federal contractors such as PHEAA, and, consequently, the Second Cause of Action will be dismissed as well.

//
//
//
//
//
//
//
//
//
//

**CONCLUSION**

For the reasons stated, PHEAA's motion to dismiss is hereby GRANTED, and the complaint is hereby DISMISSED. If the DBO wishes to file an amended complaint to assert any claim that is not preempted, it shall file a First Amended Complaint no later than October 23, 2020.

In light of the above, the Case Management Conference is hereby CONTINUED from October 9, 2020, to January 29, 2021. A Joint Case Management Statement shall be filed no later than January 22, 2021.

**IT IS SO ORDERED.**

Dated: October 2, 2020

MAXINE M. CHESNEY
United States District Judge